No. 2--05--1234     Filed: 11-12-08

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 04--CF--4004 |
| TIMOTHY L. WALSTON, | ) ) ) | Honorable Joseph G. McGraw, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE O'MALLEY delivered the opinion of the court:

Defendant, Timothy L. Walston, appeals the judgment of the circuit court of Winnebago County finding him guilty of two counts of aggravated criminal sexual assault (720 ILCS 5/12--14(a)(2) (West 2004)). On appeal, defendant argues that the trial court erred by failing to grant his motion to sever the charges and that the trial court should have allowed him to introduce a purportedly exculpatory statement he made to one of the victims. For the reasons that follow, we affirm the decision of the trial court.

Defendant was charged with four counts of aggravated criminal sexual assault (720 ILCS 5/12--14(a)(2) (West 2004)) against two victims. Count I alleged that, on November 27, 2004, defendant placed his penis in the vagina of the first victim by the use of force, causing her bodily harm. The second, third, and fourth counts, respectively, alleged that, on November 11, 2004, defendant placed his penis in the vagina, anus, and mouth of the second victim through the use of

force, causing her bodily harm. Defendant moved to sever the first count from the other three. The trial court denied the motion on the basis that, under section 115--7.3 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115--7.3 (West 2004)), even if the counts were severed, each jury would hear evidence regarding the other assault as other-crimes evidence and thus defendant would not be prejudiced if all counts were tried together.

The trial court also granted the State's motion in limine to exclude what it termed an exculpatory statement defendant made when he confronted the second victim on the morning after the alleged assault. Defendant acknowledged that he and the second victim had engaged in sexual relations the night before this confrontation, but he contended that the victim consented. The second victim took defendant's cellular phone instead of her own when she left defendant's house on the morning after the incident. When she arrived at her home, defendant was already there, and he wanted to exchange phones with her. As they exchanged phones, defendant grabbed both phones and smashed the second victim's phone on the ground. Defendant then purportedly said, "thanks for sucking and fucking me all night, and now you're doing this to me." Defendant sought to introduce evidence of his statement on the ground that it indicated that he and the second victim had consensual sexual relations, but the trial court excluded the evidence as inadmissible hearsay. After he was convicted by a jury and sentenced to two consecutive terms of 30 years' imprisonment, defendant timely appealed.

Defendant first argues that his convictions must be reversed because the trial court improperly joined the trials of the charges for both alleged victims. A trial court has substantial discretion in deciding whether to sever separate charges, and its decision will not be reversed on appeal absent an abuse of that discretion. People v. Boand, 362 Ill. App. 3d 106, 116 (2005). An

abuse of discretion occurs only where no reasonable person would agree with the trial court's ruling. People v. Barner, 374 Ill. App. 3d 963, 970 (2007). The trial court here did not address the joinder question directly, but instead allowed the charges to be joined because any misjoinder would have been harmless. Thus, we have no application of discretion to review for abuse. In any event, however, we agree with defendant that the charges against him were not properly joined into one trial.

A court may order two or more charges to be tried together "if the offenses *** could have been joined in a single charge." 725 ILCS 5/114--7 (West 2004). "Two or more offenses may be charged in the same [charging instrument] in a separate count for each offense if the offenses charged *** are based on the same act or on 2 or more acts which are part of the same comprehensive transaction" (725 ILCS 5/111--4(a) (West 2004)), unless it appears that the defendant will be prejudiced by joinder of the separate charges (725 ILCS 5/114--8 (West 2004)). See People v. Patterson, 245 Ill. App. 3d 586, 587 (1993) (describing statutory scheme).

Before addressing defendant's arguments regarding joinder, we must determine the appropriate framework for our discussion. Our cases have developed a number of factors to be used to determine whether two or more crimes are part of the "same comprehensive transaction" so as to be susceptible to joinder under the Code. Those factors, as they are commonly phrased, include (1) "the proximity in time and location of the offenses"; (2) "the identity of evidence needed to demonstrate a link between the offenses"; (3) "whether there was a common method in the offenses"; and (4) "whether the same or similar evidence would establish the elements of the offenses." People v. Gapski, 283 Ill. App. 3d 937, 942 (1996). Cases have also relied on other factors, such as "whether the defendant is in a similar position of authority in relation to each victim," "whether the

victims are similar," and "whether the severance will promote judicial efficiency." Patterson, 245 Ill. App. 3d at 588. Unfortunately, many of those factors are too often misstated or misapplied, or are simply wrong. We therefore examine each of the above factors and explain its correct application.

We begin with the most obviously inappropriate factor--the last factor from Patterson that considers whether joinder "will promote judicial efficiency." We see no warrant for a court's considering how joinder affects judicial efficiency in order to determine whether two incidents were part of a single comprehensive transaction. In People v. McLemore, 203 Ill. App. 3d 1052 (1990), the case that appears to have originated the efficiency factor, the defendant argued that her trial counsel was ineffective for failing to move to sever counts for which she was tried, and the court's entire analysis of the severance issue was as follows: "The joinder of the charges was reasonable since the testimony of the arresting officers was applicable to both [offenses] and to require an additional trial would have been judicially inefficient." McLemore, 203 Ill. App. 3d at 1057-58. As McLemore did not so much as cite the relevant statute, or any relevant factors used to construe the statute, for the joinder issue, we take it as weak support for the proposition that an additional factor should be added to the "same comprehensive transaction" analysis. As the court in Patterson noted, joinder will in most cases expedite the judicial process (Patterson, 245 Ill. App. 3d at 589), and, thus, judicial efficiency is not a factor that will vary appreciably based on the facts of each case. Further, and more important, the matter of judicial efficiency has no bearing on the controlling issue of whether multiple offenses are part of the same comprehensive transaction so that joinder is appropriate under the statute.

To the extent that a court is tempted to invoke judicial efficiency as a matter of policy, we respond that any policy debates regarding the significance of judicial efficiency were settled when the legislature enacted the joinder statute. The legislature has provided that joinder is appropriate "if the offenses *** could have been joined in a single charge" (725 ILCS 5/114--7 (West 2004)), which can occur if the offenses charged "are based on the same act or on 2 or more acts which are part of the same comprehensive transaction" (725 ILCS 5/111--4(a) (West 2004)). Unless a court can find some reason the statute should not apply, it is not free to disregard it and substitute its policy judgment for that of the legislature. In short, notions of judicial efficiency have no place in the analysis of whether two incidents are part of the same comprehensive transaction, and we disagree with any cases that use such considerations as a factor in applying the joinder statute.

We also question the appropriateness of the remaining two supplemental factors identified in Patterson. Whether there is any "similarity between the victims" may bear on modus operandi, but the factor is by itself otherwise irrelevant to whether two events were part of the same comprehensive transaction. Likewise whether "the defendant stood in a similar position of authority with respect to the victims." Unless those factors can somehow be used to demonstrate a common scheme of which each event was a part, they should not be considered in the joinder "same comprehensive transaction" analysis.

The special concurrence asserts that these two factors should remain a part of the "same comprehensive transaction" analysis because "they are extremely useful for assessing potential prejudice to a defendant." Slip op. at 44. The two factors might potentially have some use in assessing potential prejudice to a defendant, but the Code considers prejudice to a defendant separately from the question of whether two events are part of the same comprehensive transaction.

In fact, the Code incorporates prejudice to a defendant into the joinder analysis via a completely different section from the section that articulates the "same comprehensive transaction" test we now discuss. See 725 ILCS 5/111--4(a) (West 2004) ("same comprehensive transaction"); 725 ILCS 5/114--8 (West 2004) (prejudice to defendant). The special concurrence would bootstrap the prejudice question into the "same comprehensive transaction" test. We view the "same comprehensive transaction" as a separate, and preliminary, requirement for joinder.

Having addressed the additional factors listed in Patterson, we now consider the four most often used factors, which we quote above as stated in Gapski. The first factor, probably the most helpful by far, asks whether the offenses to be joined were close in time and location. This factor makes sense, because, as events become separated by time and distance, the likelihood decreases that they may be considered part of the same comprehensive transaction as is required by the statute. The approach is also consistent with the committee comments to section 111--4 of the Code, which indicate that the "same comprehensive transaction" test for joinder of multiple offenses was meant to allow prosecutors to use one indictment to charge multiple offenses based on a single act. See 725 ILCS Ann. 5/111--4, Committee Comments--1963, at 653 (Smith-Hurd 2006) ("If separate offenses appear in a single count, the indictment is subject to a charge of duplicity. *** If a single act causes several offenses, they should be joined in one indictment by separate counts unless the court orders otherwise"). To illustrate how courts should use this first factor, we summarize several cases that apply it properly.

For example, in People v. Quiroz, 257 Ill. App. 3d 576 (1993), the defendant was tried simultaneously for shooting two victims and using a gun to steal the car of a third victim. After listing the relevant factors, the appellate court upheld the trial court's decision not to sever the armed

robbery charge from the shooting charges. The court noted that the location of the two shootings was within "two blocks" of the location of the armed robbery and that defense counsel conceded that " 'there is no question there is proximity of time and location in this case.' " Quiroz, 257 Ill. App. 3d at 586.

Likewise, in People v. Ott, 237 Ill. App. 3d 119 (1992), the defendant was tried for unlawful possession of cannabis with intent to deliver and unlawful delivery of cannabis in connection with an incident in which he sold drugs to a police informant and, when police executed a subsequent search warrant at his home, was found to be in possession of approximately 5,000 grams of marijuana. Ott, 237 Ill. App. 3d at 120-21. The appellate court held that the trial court properly joined the charges, because "the offenses occurred within hours of each other at the same location, and, in fact, defendant was committing the possession offense while the delivery offense occurred." Ott, 237 Ill. App. 3d at 123.

In People v. Harmon, 194 Ill. App. 3d 135 (1990), the defendant argued that charges of battery and mob action should not have been joined with the murder charge against him. Harmon, 194 Ill. App. 3d at 139. The charges stemmed from an incident in which the defendant and three associates attended a party where a fight broke out between members of the defendant's and another gang. Harmon, 194 Ill. App. 3d at 137. The defendant and his associates left the party and walked toward a bar known as a " 'hangout' " for the rival gang, and they "jumped and beat[] up" two members of the rival gang who were sitting outside the club. Harmon, 194 Ill. App. 3d at 137. After the group then went to sit on the porch of a house "a few blocks away" (Harmon, 194 Ill. App. 3d at 140), they saw a car with two rival gang members inside, and they attacked the passengers inside the car (Harmon, 194 Ill. App. 3d at 137). The defendant killed one of the rival gang members in

the ensuing brawl. Harmon, 194 Ill. App. 3d at 137-38. The appellate court held that joinder was proper, because the murder took place "only a few blocks away" from the other crimes, all the crimes took place within a short period of time (likely less than one hour), and all the crimes "sprang from [the] common motive to attack members of a rival gang." Harmon, 194 Ill. App. 3d at 140.

In People v. Marts, 266 Ill. App. 3d 531 (1994), the defendant argued that the trial court should have joined prosecutions against him for multiple fires he had started at different places on different dates, instead of trying him only for one arson and four related manslaughters. The appellate court noted that "[t]he record [did] not indicate that these other offenses were close in time or distance; nor [did] the record indicate that the offenses were committed as part of a common scheme." Marts, 266 Ill. App. 3d at 543. In fact, "the only similarity among the offenses indicated in the record [was] that defendant made statements regarding a number of fires during one session of police questioning." Marts, 266 Ill. App. 3d at 543. Thus, the appellate court concluded that the defendant's other arsons were not part of the same comprehensive transaction as the arson for which he was tried. Marts, 266 Ill. App. 3d at 543.

In People v. Lewis, 240 Ill. App. 3d 463 (1992), the appellate court held that trial counsel was ineffective for failing to move to sever the trials for two murder charges against the defendant. Lewis, 240 Ill. App. 3d at 468. The appellate court noted that "there were different motives for the murders," "the murders occurred at different locations," and the murders occurred "on different days." Lewis, 240 Ill. App. 3d at 468-69. The only connections between the two murders identified by the appellate court were that the victims' bodies were discovered in the same location and that there were common witnesses to the two murders. Lewis, 240 Ill. App. 3d at 469.

Finally, in People v. Holveck, 171 Ill. App. 3d 38 (1988), the defendant argued that the trial court should have joined his trial for deviate sexual assault and unlawful restraint against three young children with another trial involving charges of his sexual offenses against another young child. Holveck, 171 Ill. App. 3d at 53. The appellate court noted that the two sets of incidents were "weeks apart, occurred in separate towns, and involved different victims." Holveck, 171 Ill. App. 3d at 53. Just as in Marts, the only similarity between the offenses identified by the court was that the defendant was "alleged to have made inculpatory statements concerning the [last] incident at the same time as his statements concerning [one of the first] incidents." Holveck, 171 Ill. App. 3d at 53. Thus, the court held that the trial court did not abuse its discretion in refusing to join the defendant's trials. Holveck, 171 Ill. App. 3d at 53.

The above cases implicitly hold that, no matter how similar two incidents are, incidents not occurring within a very close time and space to one another will most likely be separate incidents. When we address defendant's joinder argument below, we do so based on our understanding of the first factor as laid out above.

There is also some confusion in the case law regarding the second factor: "the identity of evidence needed to demonstrate a link between the offenses" (Gapski, 283 Ill. App. 3d at 942). This factor can be, and has been, misunderstood as referring to the idea that evidence of the two offenses may be identical. For example, in Patterson, the court essentially equated the second factor with the fourth factor--"whether the same or similar evidence would establish the elements of the offenses" (Gapski, 283 Ill. App. 3d at 942)--when it described the second factor as "the identity of evidence needed to demonstrate a link between the offenses and to establish the elements of the offenses." (Emphasis added.) Patterson, 245 Ill. App. 3d at 588. This construction of the second factor is

incorrect. The second factor asks not whether evidence of the two crimes is similar or identical but rather whether the court can identify evidence linking the crimes. See People v. Duncan, 115 Ill. 2d 429, 442 (1987) ("The State has identified evidence providing a link between the offenses"), vacated on other grounds, Illinois v. Duncan, 484 U.S. 806, 98 L. Ed. 2d 18, 108 S. Ct. 53 (1987). (This misconstruction of the second factor likely stems from a faulty interpretation of Duncan. See, e.g., Gapski, 283 Ill. App. 3d at 942 (misinterpreting Duncan).) If evidence links the two crimes, then, by definition, it will be identical for both crimes.

The proper application of this second factor is illustrated in Quiroz. There, the court noted that there was evidence linking the two shootings to the defendant's alleged armed robbery during his escape: during the time between the two sets of crimes, the defendant had attempted to gain entrance into the home of a fellow gang member as he fled the scene of the shootings. Quiroz, 257 Ill. App. 3d at 586. This evidence linked the armed robbery with the shootings and also helped establish that all three crimes were part of a common criminal scheme, because the evidence framed the defendant's stealing the third victim's car as a continuation of his attempts to flee the scene of the two shootings. Quiroz, 257 Ill. App. 3d at 586. Thus, the court considered the defendant's intervening attempt to hide in the house of an acquaintance as linking his crimes of shooting two people and stealing a car to escape. See Quiroz, 257 Ill. App. 3d at 586.

Many cases also mistake the import of the third factor, "whether there was a common method in the offenses" (Gapski, 283 Ill. App. 3d at 942). As noted, the object of the joinder analysis is to determine whether two or more offenses are part of a single comprehensive transaction. That a defendant allegedly committed multiple offenses in the same manner has no bearing on whether the offenses were part of the same comprehensive transaction. Such evidence may be relevant as

evidence of <u>modus operandi</u> (and thus admissible as other-crimes evidence probative on an issue beyond propensity), but it does not affect the relationship between the crimes themselves. As the court stated in <u>People v. Barbour</u>, 106 Ill. App. 3d 993 (1982), in examining other-crimes evidence, some authorities "have used 'common design' and '<u>modus operandi</u>' interchangeably but the concepts are quite distinguishable. A common design refers to a larger criminal scheme of which the crime charged is only a portion. <u>Modus operandi</u> means, literally, 'method of working,' and refers to a pattern of criminal behavior so distinctive that separate crimes are recognizable as the handiwork of the same wrongdoer." <u>Barbour</u>, 106 Ill. App. 3d at 999-1000. Although joinder cases have come to refer to the "common method" among multiple offenses as the third factor in the joinder analysis (e.g., <u>Gapski</u>, 283 Ill. App. 3d at 942), the factor is more aptly characterized as asking whether the offenses were part of a "common scheme," so that each of the offenses supplies a piece of a larger criminal endeavor. Cf. <u>Quiroz</u>, 257 Ill. App. 3d at 586 (three crimes were part of a common scheme where the last crime was committed in an attempt to flee the scene of the first two); <u>People v. Reynolds</u>, 116 Ill. App. 3d 328, 335 (1983) (trial court properly joined two offenses where the second was an outgrowth of the first).

As for the fourth factor, the question of "whether the same or similar evidence would establish the elements of the offenses" (<u>Gapski</u>, 283 Ill. App. 3d at 942) may be considered in the joinder analysis, but only if it is directed at the target of determining whether multiple offenses are part of a single comprehensive transaction.

The special concurrence chides that, by criticizing erroneous applications of the "same comprehensive transaction" joinder test above, we violate principles of <u>stare decisis</u>. Slip op. at 47-48. However, as the special concurrence itself observes, "[s]tare decisis counsels that a court should

' "stand by precedents and not disturb settled points." ' " Slip op. at 48, quoting People v. Sharpe, 216 Ill. 2d 481, 519-20 (2005), quoting Neff v. George, 364 Ill. 306, 308-09 (1936). Our above discussion (as well as the fact that both we and the special concurrence find precedent to support our positions) demonstrates that our case law is littered with cases that apply the joinder test correctly and cases that do not. This inconsistency is compounded by the failure of these inconsistent cases to acknowledge any inconsistency. Thus, the only things "settled" within our case law on this point are inconsistency and confusion. While principles of stare decisis may rightly be invoked to ensure that "[t]he People and the bar of this State [may] rely upon our decisions with assurance that they will not be lightly overruled" (Moehle v. Chrysler Motors Corp., 93 Ill. 2d 299, 304 (1982)), there is to this day no definitive position on which anyone could have relied. Our attempt to clarify the matter does not offend stare decisis.

As for the special concurrence's stance that the phrase "same comprehensive transaction" is ambiguous (slip op. at 41), we respond that we view as implausible the idea that the word "comprehensive" clouds the meaning of the phrase. In order for a phrase to be ambiguous, there must be at least two reasonable interpretations of the phrase, and the competing interpretation the special concurrence offers is not reasonable. The special concurrence would read the phrase "same comprehensive transaction" to mean "convenient package for trial." Slip op. at 42. The two phrases are not remotely equivalent.

The special concurrence compares the Illinois "same comprehensive transaction" test with the federal test upon which the Illinois rule is based. See slip op. at 41-42. However, the federal rule is far more expansive. It allows charges to be joined where they "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a

common scheme or plan." (Emphases added.) Fed. R. Crim. P. 8(a). The special concurrence assumes that, since the Illinois rule is " 'based on' " the federal rule (slip op. at 41, quoting 725 ILCS Ann. 5/111--4, Committee Comments--1963, at 653 (Smith-Hurd 2006)), the Illinois rule must have been intended to be identical. Quite to the contrary, if the Illinois rule were meant to be identical, its drafters would have quoted, instead of modified, the federal rule. Since the drafters of the Illinois rule consulted the federal rule and opted not to use the "same or similar character" language in the Illinois rule, the decision to omit the "same or similar character" language from the Illinois rule must have been an intentional choice. See 5 W. LaFave, J. Israel, N. King, & O. Kerp, Criminal Procedure §17.1(b), at 6 n.21 (3d ed. 2007) (classifying Illinois joinder statute as one in which "the absence of a 'same or similar character' category of joinder is quite conspicuous"). If the legislature intentionally excised the "same or similar character" language, we have no prerogative to replace it.[1]

With the above understanding of the test for joinder, we conclude that the incidents here cannot be considered part of the same comprehensive transaction. The State observes that both alleged incidents occurred in defendant's bedroom, both victims testified that they met defendant in a Rockford bar, and defendant befriended both victims before allegedly assaulting them. The State argues that these similarities establish "the identity of evidence needed to demonstrate a link between

---

[1]Although the special concurrence takes the inexplicable position that the insertion of the word "comprehensive" into the Illinois "same comprehensive transaction" rule may have been intended as a substitute for the "same or similar character" language of the federal rule (slip op. at 41-42), we think it far more likely, and more consistent with the definition of the word "comprehensive," that the legislature intended the word "comprehensive" as a substitute for the phrase "or are connected with or constitute parts of a common scheme or plan."

the offenses," that "there was a common method in the offenses," and that "the same or similar evidence established the elements of the offense[s]." However, as we explained above, the similarities on which the State relies have no relevance to the question of whether the two incidents in question were part of the same comprehensive transaction. Without anything to link these incidents as components of a grander criminal scheme, we cannot hold that these two sexual assaults against different victims, occurring 16 days apart, constitute a single comprehensive transaction, no matter how similar the assaults might have been. Thus, we conclude that the charges could not be joined under the joinder statute.

However, our analysis does not end there. Even where a trial court improperly joins charges against a defendant, the error will be deemed harmless where the evidence of all of the charged crimes would have been admissible in the separate trials that would have taken place if not for the misjoinder. See People v. King, No. 2--06--0683, slip op. at 6-7 (July 25, 2008); Patterson, 245 Ill. App. 3d at 591 (harmless-error analysis applicable to denial of motion to sever). As the trial court observed in making its ruling, and as we explain below, even if the charges had been severed as defendant sought, section 115--7.3 of the Code (725 ILCS 5/115--7.3 (West 2004)) would have allowed the juries in the separate trials to hear evidence regarding the attacks on both victims. Therefore, even though we conclude that the offenses were not part of the same comprehensive transaction, we find no reversible error in the trial court's ultimate decision to join the charges, because the joinder error did not prejudice defendant and was therefore harmless.

Before beginning our analysis on this issue, we inject an important caveat that we will later repeat for emphasis. Even though we now apply harmless-error analysis to an error in joining charges against defendant, we do not mean to condone a trial court's allowing joinder on the basis

that such joinder will cause no prejudice to the defendant. A trial court is required by statute to make an independent assessment as to whether two charges should be joined for a single trial, based solely on the law surrounding joinder. A trial court may not, and should not, skip the joinder inquiry and join the charges where it believes the decision, even if erroroneous, will not constitute reversible error. Such a practice, aside from circumventing the joinder statute, may also have consequences for a defendant, because, even if a misjoinder may be considered harmless error on appeal, it will nevertheless affect the course of a defendant's trial in at least two ways. First, in a joined trial of an unrelated crime, the jury receives not only evidence of the second crime, but also a jury instruction form regarding the second crime. Second, if two cases are severed but other-crimes evidence is allowed in each, defense counsel may object to unduly cumulative other-crimes evidence or the trial court may impose stricter limits on the other-crimes evidence. Neither defense counsel nor the trial court would exercise the same diligence in a misjoined trial. With that warning, we proceed to our analysis of whether the misjoinder here was harmless error.

Evidence regarding a defendant's other crimes is normally inadmissible if offered to demonstrate the defendant's bad character or his propensity to commit crime. People v. Evans, 373 Ill. App. 3d 948, 958 (2007). As a result, generally, other-crimes evidence may be introduced against a defendant only for the purpose of showing "modus operandi, intent, identity, motive[,] *** absence of mistake," or "any purpose other than to show the propensity to commit crime." People v. Illgen, 145 Ill. 2d 353, 364-65 (1991). As the Supreme Court has explained, propensity evidence is normally inadmissible "not *** because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge. The overriding policy of excluding

such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise,[2] and undue prejudice." Michelson v. United States, 335 U.S. 469, 475-76, 93 L. Ed. 168, 174, 69 S. Ct. 213, 218-219 (1948) (explaining rationale behind the common-law rule); see also People v. Romero, 66 Ill. 2d 325, 330 (1977) (propensity evidence is objectionable not because it has no probative value but because it has too much). Thus, the rule against other-crimes evidence of propensity or bad character is essentially a per se application of the rule that otherwise relevant evidence is inadmissible "if its probative value is outweighed by such dangers as unfair prejudice, jury confusion, or delay." People v. Cruz, 162 Ill. 2d 314, 348 (1994) (general prohibition on other-crimes evidence is an outgrowth of this rule).[3]

However, section 115--7.3 of the Code provides an exception to the rule against other-crimes evidence:

---

[2]The Supreme Court did not explain how propensity evidence poses a risk of unfair surprise greater than any other evidence.

[3]Though it is commonly said that courts weigh the "potential prejudice against the *** probative value of the other crimes evidence" (People v. Holmes, 383 Ill. App. 3d 506 (2008)), the terms "probative value" and "prejudice" are technically synonymous. The effect, and purpose, of all probative evidence is that it will prejudice the party against whom it is introduced. The question that decides whether evidence must be excluded is whether the evidence, even if probative, causes undue or improper prejudice, and, if so, whether the undue or improper prejudice so outweighs the probative value that it becomes unfair prejudice. Throughout this opinion, we use the phrases "undue prejudice" (or "improper prejudice") and "unfair prejudice" with this understanding.

"(a) This Section applies to criminal cases in which:

(1) the defendant is accused of predatory criminal sexual assault of a child, aggravated criminal sexual assault, criminal sexual assault, aggravated criminal sexual abuse, criminal sexual abuse, or criminal transmission of HIV;

\* \* \*

(b) If the defendant is accused of an offense set forth in paragraph (1) or (2) of subsection (a) or the defendant is tried or retried for any of the offenses set forth in paragraph (3) of subsection (a), evidence of the defendant's commission of another offense or offenses set forth in paragraph (1), (2), or (3) of subsection (a), or evidence to rebut that proof or an inference from that proof, may be admissible (if that evidence is otherwise admissible under the rules of evidence) and may be considered for its bearing on any matter to which it is relevant.

(c) In weighing the probative value of the evidence against undue prejudice to the defendant, the court may consider:

(1) the proximity in time to the charged or predicate offense;

(2) the degree of factual similarity to the charged or predicate offense; or

(3) other relevant facts and circumstances." 725 ILCS 5/115--7.3(a)(1), (b), (c)(1-3) (West 2004).

Thus, despite the general rule against other-crimes evidence of bad character or propensity, section 115--7.3 "enable[s] courts to admit evidence of other crimes to show [a] defendant's propensity to commit sex offenses." People v. Donoho, 204 Ill. 2d 159, 176 (2003).

However, the exception created by section 115--7.3 is not without limitation. Section 115--7.3 incorporates the general rules of evidence (725 ILCS 5/115--7.3(b) (West 2004)) and expressly provides for the balancing of the probative value of evidence against its undue prejudicial effect (see 725 ILCS 5/115--7.3(c) (West 2004)). Therefore, although section 115--7.3 provides an exception to the rule that other-crimes evidence of propensity is inadmissible, it allows such evidence to be admitted only where the trial court finds that its undue prejudicial effect does not substantially outweigh its probative value. People v. Suastegui, 374 Ill. App. 3d 635, 645 (2007). The question becomes, then, how much evidence of propensity to commit sex offenses may be admitted before its undue prejudicial effect outweighs its probative value.

We contrast this question with the question of whether evidence of a particular other crime may be admitted under section 115--7.3 as being more probative than unduly prejudicial. Here, defendant does not challenge that evidence of both crimes would have been admissible in either trial; he argues only that less thorough evidence of each crime would have been admissible in the other trial.

The case law offers scant guidance on this point. At first blush, our supreme court's decision in People v. Walker, 211 Ill. 2d 317 (2004), would appear to support the notion that only very limited propensity evidence should be allowed under section 115--7.3. In Walker, the defendant was charged with a crime of which his status as a felon was an element. Walker, 211 Ill. 2d at 319. Instead of accepting the defendant's stipulation that he was a felon, the State introduced into evidence a certified copy of conviction showing the date and nature of his past felony conviction. Walker, 211 Ill. 2d at 323. Relying on the reasoning of the United States Supreme Court on a similar issue in Old Chief v. United States, 519 U.S. 172, 136 L. Ed. 2d 574, 117 S. Ct. 644 (1997), our supreme court

held that, in light of the fact that the State had a less unduly prejudicial alternative to introducing the name and nature of the prior offense, the undue prejudice resulting from the introduction of the evidence outweighed its probative value. Walker, 211 Ill. 2d at 328-43. The supreme court noted that, "because the only purpose for admitting a defendant's prior-conviction record is to establish felon status, the name and nature of the prior convictions is unnecessary surplusage without any evidentiary significance." Walker, 211 Ill. 2d at 338. Again at first blush, this holding would seem to indicate that, even when other-crimes evidence is admissible, the State is confined to introducing the least prejudicial other-crimes evidence available.

However, the holding in Walker is inapposite to this case for at least four important reasons. First, status as a felon, unlike propensity, is a binary inquiry--either a defendant is a felon or he is not--without any measurement of degree. Thus, unlike propensity, which can be shown to be greater or lesser with more thorough evidence, the fact of a defendant's status as a felon will not be shown to be greater if the State is allowed to introduce additional evidence after establishing the fact.

Second, and relatedly, status as a felon is susceptible to definite and irrefutable proof: even a defendant who claims his innocence of the prior crime cannot dispute the officially memorialized fact of his prior conviction. Thus, the case where the State must prove a defendant's status as a felon presents the unique situation where there is no need for the State to present full evidence. The court in Walker (and the Supreme Court in Old Chief) emphasized this second point:

> "The [Supreme Court in Old Chief] hastened to note that its reasoning was only applicable in those limited situations where proving felon status was the only evidentiary purpose for admitting prior-conviction evidence. The Court reaffirmed that, as a general matter, it was 'unquestionably true' that 'the prosecution is entitled to prove its case by

evidence of its own choice, or, more exactly, that a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it.' [Citation.] The Court assured that, under ordinary circumstances, a defendant's offer to stipulate would not prevent the prosecution, which bears the burden of persuasion, from presenting its case in a manner that provides 'evidentiary depth.' " Walker, 211 Ill. 2d at 333, quoting Old Chief, 519 U.S. at 186-87, 136 L. Ed. 2d at 591-92, 117 S. Ct. at 653. In a case in which the State seeks to prove propensity, on the other hand, the defendant may very well contest the assertion that he was involved in prior bad acts, even if he was convicted of committing those acts. Indeed, the statute at issue here contemplates just that outcome when it states that "evidence of the defendant's commission of another offense or offenses *** or evidence to rebut that proof or an inference from that proof" (emphasis added) may be admissible in sex-abuse cases. 725 ILCS 5/115--7.3(b) (West 2004). Thus, in cases under section 115--7.3, unlike cases such as Walker, the State has a compelling reason to introduce thorough evidence to establish a defendant's propensity. This feature distinguishes section 115--7.3 cases from typical other-crimes cases, in which courts labor to avoid a "trial within a trial" regarding the other-crimes evidence. See, e.g., People v. Boyd, 366 Ill. App. 3d 84, 94 (2006).

The third reason the holding in Walker does not extend to cases under section 115--7.3 is that the holding in Walker was premised on the idea that the more thorough evidence was highly and unduly prejudicial because it tended to show not only that the defendant was a felon (a proper purpose for the evidence), but also that the defendant was "of bad character" (an improper purpose for the evidence). Walker, 211 Ill. 2d at 331, citing Old Chief, 519 U.S. at 180-81, 136 L. Ed. 2d at 588, 117 S. Ct. at 650. In Walker and Old Chief, the prosecution introduced its evidence under

a limited exception to the still-applicable rule that evidence of other crimes was inadmissible, and, accordingly, in those cases, any evidence beyond that necessary to meet the purpose of the exception was extraneous, and therefore inadmissible, other-crimes evidence. However, section 115--7.3 creates a broad exception to the rule by reversing it entirely in sex-offense cases: the statute states that other-crimes evidence is admissible even to show propensity. Though the courts in Walker and Old Chief were rightfully wary of allowing any more evidence than was absolutely necessary in order to satisfy the applicable exception, because any extraneous evidence would offend the prohibition against propensity evidence, a court in a section 115--7.3 case will not face the same elevated risk of unfair prejudice. This third reason that the holding in Walker does not extend to the current case, like the second reason, also distinguishes section 115--7.3 cases from cases considering the admissibility of other-crimes evidence under the common exceptions for "modus operandi, intent, identity, motive[,] *** absence of mistake," or "any purpose other than to show the propensity to commit crime." Illgen, 145 Ill. 2d at 364-65. In those cases, as in Walker and Old Chief, evidence is considered admissible within the bounds of the rule that it may not be introduced to show propensity or bad character, and, in order to avoid offending the rule against propensity or bad-character evidence, the other-crimes evidence that is admitted must be limited strictly to the exception to which it is tied. Any excess will cause the type of unfair prejudice the other-crimes rule does not allow. In a case under section 115--7.3, though, the restriction on propensity evidence is removed in whole. Cf. United States v. Enjady, 134 F.3d 1427, 1431 (10th Cir. 1998), quoting 140 Cong. Rec. S12990-01, S12990 (daily ed. September 20, 1994) (statements of Representative Dole) (in passing a federal rule allowing propensity evidence in sex-abuse cases, "Congress believed it necessary to lower the obstacles to admission of propensity evidence in a defined class of cases," and

in those cases " '[t]he presumption is that the evidence *** is typically relevant and probative, and that its probative value is not outweighed by any risk of prejudice' "); United States v. LeCompte, 131 F.3d 767, 769 (8th Cir. 1997) (federal rules allowing propensity evidence in sex-abuse cases "will supersede *** the restrictive aspects" of the general prohibition against other-crimes evidence, and the rules reflect a "strong legislative judgment that evidence of prior sexual offenses should ordinarily be admissible").[4]

The fourth reason the analysis in Walker does not translate directly to section 115--7.3 cases is that the method of determining undue prejudice in a section 115--7.3 case is much different from the method in a typical other-crimes case. It is true that the statute states that the test for the admissibility of the type of evidence covered by section 115--7.3 is, like the test for admissibility of all other-crimes evidence (and all evidence in general), whether the danger of undue prejudice to the defendant outweighs the probative value of the evidence. However, the principal source of undue prejudice from typical other-crimes evidence is its tendency to show (1) the defendant's bad character, and (2) the defendant's propensity.[5] Unlike the rule for typical other-crimes cases, section

---

[4]Section 115--7.3 of the Code was modeled after Rules 413 and 414 of the Federal Rules of Evidence (Donoho, 204 Ill. 2d at 174; Fed. Rs. Evid. 413, 414), and we can therefore find persuasive guidance for interpreting section 115--7.3 from federal cases interpreting the Federal Rules of Evidence (Childress, 338 Ill. App. 3d at 553).

[5]The concepts of bad character and propensity are distinct. The danger of evidence that a defendant has bad character is that the jury may convict him because it deems him a bad person deserving of punishment, regardless of whether he has been proven guilty of the crime charged. The danger of evidence of a defendant's propensity is that the jury will use the evidence to infer that it

115--7.3 mandates explicitly that propensity evidence not be considered per se a source of undue prejudice. As for evidence of bad character, because the statute speaks in terms of allowing "evidence of the defendant's commission of another offense" (emphasis added) (725 ILCS 5/115--7.3(b) (West 2004)), it is inevitable that the propensity evidence the section allows--evidence of a defendant's past similar offenses--will concurrently work as evidence of the defendant's bad character. Thus, section 115--7.3 implicitly condones evidence of bad character in the form of evidence of a defendant's past similar offenses introduced to show propensity. Accordingly, although section 115--7.3 propensity evidence may not be admitted where the resulting undue prejudice outweighs its probative value, neither a showing of the defendant's bad character nor a showing of his propensity will tip the scales nearly so heavily in a section 115--7.3 case as in any other case. Unlike typical other-crimes evidence, and unlike the other-crimes evidence in Walker, the undue prejudice that excludes evidence under section 115--7.3 must come from some source other than its tendency to show bad character or propensity. This fact drastically changes the measurement of undue prejudice in a section 115--7.3 case.

Just as Walker and Old Chief offer us no insight into the question of how much quantity and thoroughness are allowed for propensity evidence under section 115--7.3, the cases that have to date directly applied section 115--7.3 offer us limited direction. Of the published cases applying section 115--7.3, many consider the admissibility either of undescribed evidence or of testimony from a single previous victim of the defendant, without any discussion of the undue prejudicial effect of the

is more likely that the defendant committed the crime charged. However, the concepts are often related, because evidence of propensity will almost always, if not always, also constitute evidence of bad character.

quantity or thoroughness (as opposed to type) of evidence presented. See People v. Taylor, 383 Ill. App. 3d 591 (2008) (reversing trial court decision to disallow evidence of a prior conviction but not describing the evidence to be admitted); People v. Butler, 377 Ill. App. 3d 1050 (2007) (affirming trial court decision to allow testimony from prior victim); People v. Reed, 361 Ill. App. 3d 995 (2005) (affirming trial court decision to allow testimony from second victim from same incident); Boyd, 366 Ill. App. 3d 84 (affirming trial court decision to allow testimony of one other-crime victim); People v. Childress, 338 Ill. App. 3d 540 (2003) (without describing the evidence to be introduced, reversing trial court decision to exclude evidence of one prior crime); see also Boand, 362 Ill. App. 3d at 123 (affirming trial court decision to allow two prior victims to testify, but not discussing quantity of evidence).[6] These cases tell us when a particular other crime may be shown by evidence, but they do not tell us how much evidence of an otherwise admissible other crime will be allowed.[7]

---

[6]Another contingent of cases cite section 115--7.3 only in passing or discuss only its constitutionality, without applying it. See People v. Wilson, 214 Ill. 2d 127, 142 (2005); People v. Huddleston, 212 Ill. 2d 107, 133 (2004); People v. Hernandez, 382 Ill. App. 3d 726, 728 (2008); People v. Beaty, 377 Ill. App. 3d 861, 881-84 (2008); People v. Schneider, 375 Ill. App. 3d 734, 739 (2007); People v. Barner, 374 Ill. App. 3d 963, 969 (2007); People v. Drum, 321 Ill. App. 3d 1005, 1013 (2001) (Myerscough, J., dissenting).

[7]The two factors most commonly applied in these cases are stated explicitly in section 115--7.3(c): the proximity in time between the other crime and the charged crime, and the factual similarity between the other crime and the charged crime. See Donoho, 204 Ill. 2d at 182-86 (applying the two factors); see also 725 ILCS 5/115--7.3(c) (West 2004). We note that these two

Two additional cases rely on questionable, if not outright incorrect, interpretations of section 115--7.3. In the first case, People v. Stanbridge, 348 Ill. App. 3d 351 (2004), the court ruled inadmissible testimony from two of the defendant's alleged previous victims on the thin ground that one of the incidents had occurred 10 years prior, even though the supreme court in Donoho had ruled admissible evidence of an incident 12 to 15 years prior. Compare Stanbridge, 348 Ill. App. 3d at 357, with Donoho, 204 Ill. 2d at 186. Stanbridge also relied on, but did not apply, the idea that the other crime must be similar to the crime being tried in order to be admissible. Stanbridge, 348 Ill. App. 3d at 357. Instead of applying this idea, Stanbridge stated in a conclusory manner that the other-crimes evidence should not be admissible in light of the supreme court's admonition in Donoho that trial courts should be cautious in admitting propensity evidence. Stanbridge, 348 Ill. App. 3d at 357. This use of the supreme court's admonition to trial courts turns the statute on its head. Courts should consider the prejudice inquiry under section 115--7.3 "in such a way that allows section 115--7.3 to operate as the legislature intended, which is to permit the State to use evidence of a defendant's other sexual assault crimes as proof of his propensity to commit the crime for which he is charged." Holmes, 383 Ill. App. 3d at 516, citing Childress, 338 Ill. App. 3d at 554. In the second case, People v. Wassell, 321 Ill. App. 3d 1013 (2001), the court held that the trial court

---

factors are worded much like two of the factors for joinder we discussed above. However, the proximity in time required for other-crimes evidence under section 115--7.3 is much less strict than the proximity in time required under the joinder statute. See Donoho, 204 Ill. 2d at 186 (offenses 12 to 15 years apart still sufficiently proximate in time). Likewise, the factual similarity that is relevant under section 115--7.3 is essentially the "common method" inquiry we deemed irrelevant above with respect to joinder.

correctly barred the State from presenting the testimony of two of the defendant's four previous victims. However, in so ruling, the court overlooked the primary feature of section 115--7.3--it allows propensity evidence in certain sex-crime cases--and instead applied the section as if it allowed propensity evidence only "if that evidence is otherwise admissible under the rules of evidence." Wassell, 321 Ill. App. 3d at 1016. Because the court in Wassell did not apply the portion of section 115--7.3 that deems propensity evidence admissible, its holding is of no value to us.

Yet two more cases include allusions to more thorough other-crimes evidence, but stop short of articulating any limits on the amount of thoroughness allowed for propensity evidence under section 115--7.3. In the first case, Donoho, our supreme court addressed the slightly different question of whether the trial court erred in allowing the State to introduce testimony from a police officer regarding a previous incident involving the defendant. Donoho, 204 Ill. 2d 159. The supreme court held that the evidence of the prior offense was sufficiently probative to overcome any undue prejudice. Donoho, 204 Ill. 2d at 186. In so holding, the supreme court "note[d] that the trial court reduced the potential prejudicial effect *** by refusing to allow the State to quote [a written inculpatory statement the defendant had signed regarding the previous incident] or to publish the detailed two-page document to the jury." Donoho, 204 Ill. 2d at 186. However, the supreme court did not address the question of whether the introduction of the statement, in addition to the testimony, would have constituted reversible error in light of the fact that the defendant challenged the veracity of the other-crimes evidence. In the second case, Holmes, 383 Ill. App. 3d at 508, the court held that the trial court erred in not allowing the State to introduce "evidence of [one of two] of [the] defendant's prior convictions of similar sexual assaults *** and the victims' testimony in those cases," but the court did so by relying solely on the other offense's proximity in time and

similarity to the subject offense, and without any discussion of the quantity of evidence the State sought to introduce on the other crime. These two cases therefore do not aid us.

Without any help from the above-discussed cases, we are left with only one published decision that addresses the question of what amount of evidence regarding otherwise admissible other crimes the State is allowed to introduce under section 115--7.3: People v. Cardamone, 381 Ill. App. 3d 462 (2008). In Cardamone, the defendant, a gymnastics coach, was charged with sexually abusing his students, and the State introduced evidence of at least 158 instances of uncharged conduct against 15 alleged victims. Cardamone, 381 Ill. App. 3d at 491-93. Indeed, "the vast majority of the State's case consisted of other-crimes evidence." Cardamone, 381 Ill. App. 3d at 491. The court in Cardamone noted that the uncharged allegations concerned incidents that were proximate in time and similar to the charged incidents, but it concluded that the sheer quantity of propensity evidence caused unfair prejudice to the defendant. Cardamone, 381 Ill. App. 3d at 493-97. To answer the question of "how much propensity evidence is allowed under section 115--7.3," the court turned to cases applying common-law other-crimes principles. Cardamone, 381 Ill. App. 3d at 494-95. (We noted above in our discussion of Walker that common-law other-crimes cases are not perfectly analogous to section 115--7.3 cases, because the danger of undue prejudice from propensity evidence is greatly decreased under section 115--7.3, which deems such evidence acceptable. Nonetheless, we understand Cardamone to cite the common-law other-crimes cases for illustration, and not for directly defining the contours of section 115--7.3.) Cardamone cited one case in which evidence of "numerous" other crimes was held to have been "prosecutorial overkill" (People v. Funches, 59 Ill. App. 3d 71, 73 (1978)) and one case in which testimony from two of the defendant's alleged previous victims was deemed admissible under common-law principles (People

v. Wilson, 214 Ill. 2d 127 (2005)). From these cases, Cardamone drew the rule that "a large volume may make probative other-crimes evidence [unfairly] prejudicial," and it concluded that the large volume of evidence regarding uncharged conduct there was "overwhelming and undoubtedly more [unduly] prejudicial than probative." Cardamone, 381 Ill. App. 3d at 496, 497.[8]

Before moving on, we clarify one statement from Cardamone. Based on language from Stanbridge indicating that the evidence there was inadmissible as curative evidence in response to statements made during the defense's opening argument (see Stanbridge, 348 Ill. App. 3d at 358), the decision in Cardamone stated that other-crimes evidence may be considered more unduly prejudicial "where it was presented in the State's case-in-chief." Cardamone, 381 Ill. App. 3d at 496. For the reasons articulated in our discussion of Walker, the State in a section 115--7.3 case may very well be compelled to introduce propensity evidence in its case-in-chief. It is not the timing but the nature and quantity of the propensity evidence that can render it unfairly prejudicial. Whether the other-crimes evidence may otherwise be admissible to rebut a statement (or cure a misstatement) made by the defense has no bearing on whether the evidence is unfairly prejudicial in the first place under section 115--7.3. We therefore take the statement from Cardamone to mean that the defendant's pressing an issue during his case may give the State further justification to introduce additional propensity evidence in rebuttal, not that evidence is more unduly prejudicial in the first place if it is introduced in the State's case-in-chief.

The discussion in Cardamone gives us a start in assessing the limits imposed on section 115--7.3 propensity evidence by the requirement from section 115--7.3(c) that the undue prejudicial

---

[8]Cardamone also cited Stanbridge, but, for the reasons stated above, we do not consider that case helpful here.

effect of such evidence not outweigh its probative value. However, due to the extreme facts in Cardamone, the case instructs us only on the outer bounds of the rule; it reveals nothing of the rule's more subtle inner striations.

Because we find no specific guidance from cases applying section 115--7.3, we resort to more general rules for limiting the quantity of evidence the prosecution may introduce. Generally, "[i]f other crimes evidence is admitted, it should not lead to a mini-trial of the collateral offense; the court should carefully limit the details to what is necessary to illuminate the issue for which the other crime was introduced." People v. Nunley, 271 Ill. App. 3d 427, 432 (1995). (Here, propensity was the issue for which the other-crimes evidence would have been introduced.) Courts' disinclination toward "mini-trials" of collateral offenses is, of course, another application of the principle that evidence should not be admitted where it causes unfair prejudice, jury confusion, or delay. See Nunley, 271 Ill. App. 3d at 431 (evidence should be excluded if its probative value is outweighed by the danger of unfair prejudice, jury confusion, or delay). However, the danger of unfair prejudice in the context of a section 115--7.3 case, as opposed to a common-law other-crimes case, is greatly diminished. As we explained above, the common-law rule against other-crimes evidence is essentially a per se application of the rule that unfairly prejudicial evidence should not be admitted even if probative. Cf. Cruz, 162 Ill. 2d at 348 (rule against other-crimes evidence is "an outgrowth of" the principle that unfairly prejudicial evidence is inadmissible). When the legislature enacted section 115--7.3, it upended this rule with respect to the types of crimes listed in the section, so that not only is other-crimes evidence offered to show propensity no longer per se unfairly prejudicial, it is actually proper. As a result, the danger of unfair prejudice in a section 115--7.3 case may still exist, but it is much less pronounced than in a common-law other-crimes case. Cf. People v.

Lindgren, 79 Ill. 2d 129, 194 (1980) ("The erroneous admission of evidence of other crimes carries a high risk of prejudice and ordinarily calls for reversal"). Accordingly, while a "mini-trial" of a collateral offense can cause undue prejudice in a section 115--7.3 case, it is not necessary in such a case that a court "carefully limit[] the details of the other crime to what is necessary to 'illuminate the issue for which the other crime was introduced' " (Boyd, 366 Ill. App. 3d at 94, quoting Nunley, 271 Ill. App. 3d at 432) to the extent required in common-law other-crimes cases.

Nevertheless, high quantities of other-crimes evidence may still be inadmissible under section 115--7.3 for reasons other than its tendency to show propensity, because the gratuitous other-crimes evidence may also cause jury confusion or unnecessary delay. See People v. McKibbins, 96 Ill. 2d 176, 186-87 (1983) ("We agree that it was not necessary to conduct a mini-trial of the [other crime] ***, and for the sake of economy of judicial time, we advise against such detailed evidence of other offenses"). However, again, though these concerns exist in section 115--7.3 cases, they are weakened by the force of contrary principles. Unlike the rule for typical other-crimes cases, section 115--7.3 actually contemplates that the State and the defense will present competing evidence regarding the other crime. See 725 ILCS 5/115--7.3(b) (West 2004) ("evidence of the defendant's commission of another offense or offenses *** or evidence to rebut that proof or an inference from that proof" (emphasis added) may be admissible in sex-abuse cases). Our supreme court's peroration in McKibbins, even though stated in the less permissive context of normal other-crimes evidence, aptly describes the State's interest in presenting other-crimes evidence in this context as well:

"The appellate court indicated that some number of convictions less than the total could have been properly introduced to impeach the defendant if he testified. The question would then become which of these convictions would be admitted, those nearest in point of

time to the crime charged or those most distant?  Also, how many convictions would be sufficient to impeach the defendant's credibility?  It may be that a single theft conviction would be enough to impeach the defendant in the eyes of one juror, whereas something more would be required for others.  The defendant had compiled an overwhelming record of dishonesty.  He had furnished the prosecution with substantial ammunition.  A trial is an adversary proceeding.  The State had the right and the obligation to use all of the impeaching evidence it possessed in order to destroy the credibility of the defendant if he were to testify.  After compiling such a record, the defendant should not now expect the court to prevent the State from showing to the jury that he is utterly unworthy of belief.  If the defendant in this case was thus prevented from testifying, this is a consequence of his own wrongdoing."  McKibbins, 96 Ill. 2d at 189.

See also People v. Stephens, 18 Ill. App. 3d 971, 978 (1974) ("[T]he State is not obligated to anticipate the avenue of defense and limit its proofs accordingly, even though [the] defendant admits or stipulates to the existence of certain facts").  The above statement rings even louder in section 115--7.3 cases, because (1) under section 115--7.3, the State's interest in presenting propensity evidence is stronger in light of the statutory invitation to a defendant to challenge the evidence and (2) the defendant's interest in excluding the evidence is weaker in light of the statutory reversal of the common-law presumption that other-crimes evidence is per se unfairly prejudicial.  Any limits under section 115--7.3 on mini-trials based on judicial economy must, therefore, defer largely to prosecutorial discretion.

Although our supreme court has warned that trial judges should "be cautious in considering the admissibility of other-crimes evidence to show propensity by engaging in a meaningful

assessment of the probative value versus the [undue] prejudicial impact of the evidence" (Donoho, 204 Ill. 2d at 186), it appears from our discussion above that the actual limits on the trial court's decisions on the quantity of propensity evidence to be admitted under section 115--7.3 are relatively modest, especially when combined with the highly deferential abuse-of-discretion standard that governs review of such trial court decisions (see, e.g., Donoho, 204 Ill. 2d at 182).[9]  While a reviewing court will reverse the trial court's decision to allow too much otherwise relevant propensity evidence under section 115--7.3 in extreme situations such as that presented in Cardamone, the modest restrictions we outlined above will in most other cases dictate affirmance.  Nevertheless, in order to heed the supreme court's warning with respect to what other crimes may be proven under

---

[9]We observe that the limits on the nature of propensity evidence--i.e., what other crimes can be proven and what type of evidence may be introduced--may be more imposing than the limits discussed herein on the quantity or thoroughness of that evidence, for at least two reasons.  First, section 115--7.3(c) explicitly requires that courts consider whether other crimes are close in time and similar to the charged crime in order to meet minimum standards of probative value for admissibility.  The question of whether too much evidence of a particular crime was introduced comes only after the inquiry of whether a particular crime may be considered probative.  Second, the question of whether a specific other crime may be proven could also raise questions regarding whether a description of the circumstances of that other crime, which may be more heinous than the charged crime, causes undue prejudice.  We intend the above discussion to decide only the issue of how much or how thorough other-crimes evidence may be if the other crimes to which it relates have already been deemed the proper subject of proof.  As we noted above, this is a different question from the question of whether evidence of a particular other crime should be admissible.

section 115--7.3, courts considering the quantity of other-crimes evidence to admit should likewise be mindful of the balance between probative value and undue prejudice. Though there are no explicit statutory factors directed toward assessing the undue prejudice of more thorough other-crimes evidence, trial courts may consider the additional undue prejudice caused by the more thorough evidence (even though that undue prejudice will be less undue than in a typical other-crimes case), the likelihood that the more thorough evidence will distract the jury or unduly prolong the trial, and the availability of less improperly prejudicial alternative evidence (or the suitability of more limited evidence) to establish propensity. Cf. People v. Falsetta, 21 Cal. 4th 903, 917-18, 986 P.2d 182, 190, 89 Cal. Rptr. 2d 847, 856 (1999) (listing factors for prejudice under Cal. Evid. Code §1108, which, like the Illinois statute, was modeled after Federal Rules of Evidence 413 and 414).

Defendant objects to a broad reading of section 115--7.3 because, "[i]f the rules limiting presentation of other crimes evidence no longer apply in cases involving admission of propensity evidence under [section] 115--7.3, then there can never be prejudice in any sex offense cases for purposes of severance." We cannot disagree with defendant's basic point. The effect of section 115--7.3 as we read it, when combined with the rule that a reviewing court will reverse a conviction for misjoinder only if the misjoinder prejudiced the defendant, is essentially to eviscerate the joinder statute for sex-offense cases in all but the most extreme cases of gratuitous other-crimes evidence. As defendant also notes, "[s]ometimes statutes have unintended effects." Section 115--7.3 was modeled after Rules 413 and 414 of the Federal Rules of Evidence. However, the federal joinder rules, which allow joinder when two or more crimes "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan" (emphases added) (Fed. R. Crim. P. 8(a)), are dramatically more permissive than the joinder

rules in Illinois, which, as discussed above, allow joinder when two or more crimes are part of the same comprehensive transaction. Thus, Rules 413 and 414 of the Federal Rules of Evidence had no appreciable effect on joinder in the federal system, which already allowed crimes to be joined where they are of "the same or similar character" and thus would have allowed joinder of two pending sexual-assault trials. Cf. State v. Celestine, 452 So. 2d 676 (La. 1984) (allowing joinder of two separate sexual assaults under a rule that mirrors the federal language). But, when Rules 413 and 414 of the Federal Rules of Evidence were effectively transplanted into the Code in Illinois, they affected Illinois joinder law in a way the drafters of the federal rules would not have contemplated, by allowing expansive propensity evidence of crimes that cannot be joined under the Illinois joinder scheme. We again do not question defendant's point that the ramifications for joinder were likely unforseen, but those ramifications are an inevitable consequence of our interpretation of section 115--7.3.

That said, we repeat the caveat we issued at the outset of our harmless-error analysis. While the above discussion indicates that trial courts enjoy wide latitude in admitting evidence under section 115--7.3, courts should not read that section, or this opinion, as an invitation to overlook the joinder statute on the ground that even a misjoinder will not lead to reversal. A trial court must consider joinder separately, and completely, regardless of its assessment of the harmlessness of misjoinder. We further note that, as discussed below, defendant here challenged the credibility of the complaining witnesses and thus challenged the other-crimes evidence; defendant's position provided the State further justification to introduce additional evidence of each crime. The undue prejudice to a defendant who does not challenge the State's other-crimes evidence in a misjoined case

might be greater than we see here, and, in such a case, our opinion today would not necessarily shield a trial court's misjoinder.

The application of the above principles to the current case defeats defendant's argument that the other-crimes evidence presented here would not have been admissible under section 115--7.3. To address defendant's argument, we provide a brief summary of the evidence adduced at trial with respect to each victim. Both complainants described their versions of the events surrounding defendant's alleged assaults; both testified, among other things, that they had known defendant for a short time (both had visited his house on prior occasions) before defendant forced them to go to his home and then physically and sexually assaulted them. (Defendant does not now dispute that the testimony of each victim would have been admissible in both trials if they had been severed; his argument focuses on the additional evidence the State presented regarding each alleged crime.) To support the first victim's testimony, the State introduced testimony from a police officer, a cab driver, a nurse, and a doctor. The police officer testified that he found the victim in a hysterical state the day after her alleged assault, that the victim reported that defendant had sexually assaulted her, and that he saw various injuries on the victim. He also testified to establish a portion of the chain of custody of evidence from a sexual-assault kit. The cab driver, who drove the first victim home the morning after the alleged assault, testified that the victim was shaky, that the victim reported to him that she had been sexually assaulted, and that, when he and the victim arrived at her home, defendant angrily confronted the victim regarding their cellular phones. The nurse, who was at the hospital the victim went to on the day after the alleged attack, testified that she took biological samples from the victim. The first victim's doctor, who also treated the second victim, testified that the first victim reported that she had been sexually assaulted, that he took samples from the victim, and that he saw

various injuries on the victim (including a bruise in her vagina). The doctor also verified photographs depicting the first victim's injuries.

As for the second victim, the State presented supporting testimony from a police officer, two nurses, a friend of the victim, and the same doctor who testified regarding the first victim. The police officer described how he found the second victim and testified regarding the chain of custody of certain evidence. He also reported that the victim appeared to be distraught. The first nurse to testify stated that the victim reported that she had been sexually assaulted and that the victim bore injuries consistent with her story. The second nurse testified that she took samples from the victim and that she saw the victim's injuries. The victim's friend testified regarding a confrontation between him and defendant at a bar on the night defendant allegedly assaulted her. His testimony corroborated the victim's testimony and slightly contradicted defendant's. Finally, the victim's treating doctor testified that the victim reported she had been sexually assaulted and that he saw injuries on the victim. He also verified photographs depicting the victim's injuries.[10]

---

[10]In summarizing the testimony he deems unfairly prejudicial, defendant refers also to forensic testimony related to both victims. However, the forensic testimony was limited to chain-of-custody issues and to matching samples with defendant's or the victims' DNA profiles. We see no undue prejudice from this testimony, and we do not discuss it further. We also note that the State presented additional police testimony, not discussed above, that related to neither victim specifically, but instead to police encounters with defendant. Like the forensic evidence, we do not deem this evidence relevant to our inquiry into whether defendant was prejudiced by misjoinder.

In his case-in-chief, and on cross-examination, defendant challenged the credibility of the victims' testimony. In his own testimony, defendant denied physically assaulting the victims and stated that he engaged in consensual intercourse with both.

Aside from the testimony of each victim, which even defendant does not argue would not have been admissible in separate trials under section 115--7.3, the supplemental testimony offered by the State was relatively limited. Much of the supplemental testimony defendant identifies was brought to establish the chain of custody (and the foundation) for physical evidence. The remainder of the supplemental testimony corroborated portions of the victims' testimony by establishing that they bore injuries consistent with their versions of events, by establishing that they were upset shortly after the incidents, and by confirming that defendant had been angry at the bar before allegedly assaulting the second victim. The most salacious of this evidence--the evidence regarding the injuries and the evidence regarding the victims' emotional states after the incidents--served the important function of corroborating the victims' testimony, testimony that defendant challenged or refuted on several grounds. As we explained above, section 115--7.3 contemplates that a defendant will challenge propensity evidence and thus implicitly contemplates that the State may offer more thorough evidence in anticipation of impeachment. Given our expansive interpretation of the amount of evidence allowed under section 115--7.3 (and the high level of deference afforded the trial court in making decisions under section 115--7.3), we do not conclude that the undue prejudice from the amount of detail contained in this supplemental propensity evidence outweighed its probative value. Again based on our interpretation of the unusually low level of undue prejudice attendant to other-crimes evidence under section 115--7.3, we also conclude that the danger of jury confusion or undue delay was not so strong that the trial court's decision to allow the evidence in each trial would

have been an abuse of discretion. (Indeed, with the exception of the testimony of the doctor, the direct examination of each of the above-described witnesses comprised 11 pages or fewer in the trial transcript.) Because we would find no reversible error in the trial court's decision to allow all of the above other-crimes evidence pursuant to section 115--7.3 even in each of two separate trials, we conclude that defendant suffered no prejudice from the misjoinder of the trials on the charges against him. We therefore reject defendant's argument that his convictions must be reversed for the trial court's decision to allow the charges against him to be joined in a single trial.

Defendant's second argument on appeal is that the trial court erred in barring admission of his statement to the second victim, "thanks for sucking and fucking me all night, and now you're doing this to me." Defendant asserts that this statement would have bolstered his assertion that sexual relations between the second victim and him were consensual.

"Hearsay evidence, an out-of-court statement offered to prove the truth of the matter asserted, is generally inadmissible." People v. Sullivan, 366 Ill. App. 3d 770, 779 (2006). At trial, the defense stated expressly that it sought to introduce the statement as evidence of the truth of the matter asserted therein, and the only basis the defense offered for admitting the statement was the excited-utterance exception to the hearsay rule. Defendant reprises this approach on appeal. Because defendant did not offer the evidence for any other, nonhearsay purpose, such as to show defendant's lack of consciousness of guilt or to demonstrate one possible cause of defendant's anger during the

phone confrontation, we do not consider those issues.[11] We instead confine our discussion to the applicability of the excited-utterance exception to the hearsay rule under the facts of this case.

In order for a hearsay statement to be admissible under the excited-utterance exception, sometimes also referred to as the spontaneous-declaration exception (Sullivan, 366 Ill. App. 3d at 779), "(1) there must be an occurrence sufficiently startling to produce a spontaneous and unreflecting statement, (2) there must be an absence of time for the declarant to fabricate the statement, and (3) the statement must relate to the circumstances of the occurrence." People v. Williams, 193 Ill. 2d 306, 352 (2000). A trial court has broad discretion in ruling on evidentiary issues and will not be reversed on appeal absent an abuse of that discretion. People v. Kaczmarek, 243 Ill. App. 3d 1067, 1078 (1993).

Even assuming that the phone incident amounted to the type of startling event required under the first prong of the test for the excited-utterance exception, we conclude that the statement defendant sought to introduce still fails the second and third prongs of the test. In order to pass the second prong, the statement must have been made without any time for the declarant to reflect on the contents of the statement. Here, the portion of defendant's statement he views as exculpatory--the portion of the statement describing the events of the previous night--occurred well after the events it purported to describe, and defendant had ample time to fabricate between the event his statement described and his statement the following morning.

---

[11]In his reply brief, defendant characterizes his statement as "the shocked reaction of a man who believed himself to have been wronged by a woman with whom he had had consensual sex." However, again, at trial and here on appeal, defendant has argued for the statement's admissibility to show the truth of the matter asserted.

In order to satisfy the third prong of the test for the excited-utterance exception, a statement must relate to the circumstances of the startling occurrence. According to defendant, the startling occurrence here was the purported theft of his phone. However, the portion of defendant's statement that could be seen as exculpatory, "thanks for sucking and fucking me all night," does not relate to the purported theft of his phone, but instead to the incident of the previous night. Thus, defendant's statement did not relate to the circumstances of the startling occurrence. See People v. Harrod, 140 Ill. App. 3d 96, 106 (1986) (assuming, arguendo, that disablement of car was a startling event, statement regarding having just left lawyer's office had nothing to do with car becoming disabled).

Accordingly, we conclude that the statement defendant sought to introduce into evidence did not fall within the excited-utterance exception to the hearsay rule, and we reject defendant's argument that the trial court abused its discretion in refusing to allow the statement into evidence.

For the foregoing reasons, we affirm the judgment of the circuit court of Winnebago County.

Affirmed.

JORGENSEN, J., concurs.

JUSTICE GROMETER, specially concurring:

I agree with the result to which the majority comes, and I fully endorse its discussion of section 115--7.3 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115--7.3 (West 2004)) as well as its treatment of the hearsay issue. I do not, however, agree with its analysis of the joinder statute (725 ILCS 5/111--4 (West 2004)). The majority's discussion of the factors courts use to determine whether two charges may be tried together reveals a fundamental misunderstanding of the nature and purpose of joinder. Accordingly, I write separately to address that issue.

The heart of my disagreement with the majority concerns what it is we are trying to assess when we ask whether it would be appropriate to try two charges jointly. The majority believes that joinder is appropriate only if there is some actual relationship between two crimes. That is, what the majority does looks more like metaphysics in that it seems to ask whether there is some factual connection between the two events in question. Conversely, I believe that what we are trying to determine is simply whether two crimes form an acceptable package for a single trial. To this end, there are two overarching concerns: judicial efficiency and prejudice to the defendant. See People v. Willer, 281 Ill. App. 3d 939, 952 (1996); People v. Karraker, 261 Ill. App. 3d 942, 951 (1994). The factors that have developed over the years in the myriad cases where courts have analyzed the propriety of joinder make much more sense if understood as tools for assessing these concerns than the majority ascribes to them. These factors, though not always set forth identically, are: "the proximity in time and location of the offenses, the identity of evidence needed to demonstrate a link between the offenses, whether there was a common method in the offenses, and whether the same or similar evidence would establish the elements of the offenses." People v. Gapski, 283 Ill. App. 3d 937, 942 (1996).

Before proceeding further, I must address the majority's contention that the language of section 111--4 prohibits a court from considering policy matters in interpreting the statute. Slip op. at 5. It is generally true that a court may not depart from the plain language of an unambiguous statute. People v. Wright, 194 Ill. 2d 1, 29 (2000). The majority assumes, without explanation, that section 111--4 is clear and unambiguous. I, however, see nothing clear regarding the phrase "same comprehensive transaction." 725 ILCS 5/111--4 (West 2004). How does a "same comprehensive transaction" differ from an ordinary "same transaction?" Is it a broader or narrower concept? What

does the word "comprehensive" add? I believe that the inclusion of this word renders the phrase "same comprehensive transaction" unclear. Therefore, "it [is] necessary to look beyond express words and to consider the prospective and remedial objectives or purpose to be served by the statute." Mack v. Seaman, 113 Ill. App. 3d 151, 154 (1983).

Moreover, the very first sentence in the committee comments to section 111--4 states, "This paragraph is based on Rule 8 of the Federal Rules of Criminal Procedure." 725 ILCS Ann. 5/111--4, Committee Comments--1963, at 653 (Smith-Hurd 2006). Rule 8 reads, in pertinent part, as follows:

"The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged--whether felonies or misdemeanors or both--are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a).

Rule 8 simply states "same act or transaction." Our legislature must have meant something when it added "comprehensive." Perhaps it intended "comprehensive" to broaden the meaning of "same transaction" and replace the "same or similar character" language of Rule 8. The majority sets up a strawman here, asserting that I am arguing that "comprehensive" means "same or similar character." Slip op. at 13 n.1. My point is that it is difficult to ascertain what it is the legislature meant. The legislature's intent is certainly not clear to me. Additionally, the committee comments state, "[This] section is substantially a restatement and codification of former Illinois law." 725 ILCS Ann. 5/111--4, Committee Comments--1963, at 653 (Smith-Hurd 2006). Former Illinois law included Herman v. People, 131 Ill. 594, 601 (1889), a case in which our supreme court rejected the common-law rule against joining felonies and misdemeanors because it would "embarrass, delay, and prevent the administration of justice." Over 100 years ago, the notion that joinder served judicial

efficiency had already been recognized in this state, and it was thus part of the law that the legislature codified when it enacted section 111--4.

The majority nevertheless contends that "comprehensive" does not cloud the meaning of "same comprehensive transaction." Despite its many protestations, the majority never explains what "comprehensive" adds. Apparently, the majority believes the word does not add anything to the meaning of the phrase. This, of course, violates a cardinal principle of statutory construction. Compton v. Ubilluz, 351 Ill. App. 3d 223, 231 (2004) (a statute should not be construed so as to render any portion of it meaningless). The majority charges that "same comprehensive transaction" is not "remotely equivalent" to "convenient package for trial." Slip op. at 12. I agree; however, as I have explained, I am not relying on the plain language of the statute to support my construction of it, for that language is ambiguous.

Accordingly, I will take a policy-based approach as I examine the factors courts are to consider in assessing the propriety of joining multiple charges. This makes sense even disregarding what I have set forth above. Joinder is a procedural device available to courts to help manage their crowded dockets. They should be able to use it to the extent that it does not unfairly prejudice a defendant. Judicial efficiency and prejudice to the defendant are paramount concerns. With this in mind, I will now turn to the particular factors that have been articulated by the courts.

I will start with what the majority deems the "most obviously inappropriate factor," judicial efficiency. Slip op. at 4. I would agree with the majority's assessment if we were concerned with the relationship between two events in an ontological sense. That two charges can be efficiently tried together has no bearing on whether they are related as a matter of fact. However, it is of obvious relevance to the question of whether the two charges form an appropriate package for trial. There

is little reason to try two charges together if it is not efficient to do so. As the majority (slip op. at 4) and the court in People v. Patterson, 245 Ill. App. 3d 586, 589 (1993), note, trying multiple charges together typically will be efficient. Thus, more often than not, it should be treated as a constant and given little weight. It is conceivable that, in certain circumstances, joinder would not be efficient. Perhaps multiple crimes, though otherwise linked, are so removed geographically that marshaling witnesses and evidence would be cumbersome if the trial were held in one location. In such a case, efficiency would militate against joinder. Cf. Walker v. American River Transportation, 277 Ill. App. 3d 87, 92 (1996) ("None of the potential venues is free from practical problems affecting the ease and expense of the litigation. The geographical dispersion of the crew, the treating physicians, and the forensic experts presents [sic] a logistical problem in marshaling the evidence no matter where this case is tried"). Admittedly, this hypothetical would represent a rare case, but I do not view this as a reason to write judicial efficiency out of the test. Indeed, People v. Boand, 362 Ill. App. 3d 106, 116 (2005), expressly recognizes that efficiency may weigh in favor of severance, articulating this factor as "whether the severance will promote judicial efficiency."

In my view, the rest of the factors primarily concern prejudice to the defendant, although judicial efficiency is a factor underlying some of them as well. That is, they largely act as a sort of shorthand guiding the inquiry regarding the potential prejudicial effect of joinder. Take what the majority terms the "two supplemental factors identified in Patterson." Slip op. at 5. These factors are whether there is any similarity between the victims and whether the defendant stood in a similar position of authority with respect to the victims. Patterson, 245 Ill. App. 3d at 588. Again, I agree with the majority that these factors have no bearing on the real relationship between multiple events. However, they are extremely useful for assessing potential prejudice to a defendant if a joint trial is

held. If the victims are dissimilar, a potential for prejudice exists. For example, one victim may be particularly sympathetic. If a defendant is tried for two thefts, one from a 35-year-old man and another from a senior citizen, the jury may very well be outraged by the act targeting an elderly person. That ire could affect its judgment regarding the other theft. Similarly, any moral outrage arising from an abuse of a position of authority against one victim could be prejudicial to a defendant with regard to crimes targeting other victims over whom the defendant did not hold the same position of authority. These two "supplemental factors" have a place in the analysis.

The majority states that it is improper to even consider prejudice to the defendant in determining whether joinder is appropriate, for "the Code incorporates prejudice to a defendant into the joinder analysis via a completely different section from the section that articulates the 'same comprehensive transaction' test we now discuss." Slip op. at 5. The majority then goes on to resolve this portion of the appeal by finding that defendant was not prejudiced. The majority points out that prejudice appears in section 114--8 of the Code, which governs motions for severance, but not section 111--4. See 725 ILCS 5/114--8, 111--4 (West 2004). I agree that the text of section 111--4 does not expressly mention prejudice; however, the committee comments to that section do. 725 ILCS Ann. 5/111--4, Committee Comments--1963, at 653 (Smith-Hurd 2006) ("The court may order a separate indictment for each offense if for any reason the defendant would be prejudiced or the jury confused"). Moreover, it would be needlessly awkward to require a trial court to make a determination regarding the propriety of joinder without considering prejudice, only to have to revisit the issue if a party makes a motion for severance.

I also disagree with the majority's assertion that temporal and spatial proximity (the first factor (Gapski, 283 Ill. App. 3d at 942)) is the factor that is "probably the most helpful by far." Slip

op. at 6. It is certainly an important factor. If events are linked in space and time, it is likely that evidence will overlap. If evidence overlaps, presenting it in one trial is certainly more efficient. Moreover, if much of the same evidence would be presented in separate trials, any prejudice to a defendant would be reduced, as the jury would be hearing the overlapping evidence regardless of whether one or multiple trials were held. Nevertheless, I see no reason to give this factor elevated status, for proximity may also be coincidental. Cf. State v. Wills, 69 Ohio St. 3d 690, 691, 635 N.E.2d 370, 371 (1994) (the defendant "should serve no less time because of the coincidental proximity of his two victims"). The majority discusses a number of noncontroversial cases that apply this factor (slip op. at 6-9), and I have no quarrel with these cases. I would point out, however, that courts have found joinder appropriate in circumstances much less proximate. In People v. Lewis, 269 Ill. App. 3d 523, 529 (1995), for example, the court found that a series of assaults against four victims occurring over a 22-month period were properly joined.

I largely agree with the majority's discussion of the second factor, "the identity of evidence needed to demonstrate a link between the offenses." Gapski, 283 Ill. App. 3d at 942. I further agree with the majority that this factor has often been conflated with other factors. Slip op. at 9. If evidence is, in fact, identical, it would weigh in favor of joinder, but this fact would be more properly considered under the fourth factor, "whether the same or similar evidence would establish the elements of the offenses." Gapski, 283 Ill. App. 3d at 942.

The majority improperly narrows the third factor, "whether there was a common method in the offenses" (Gapski, 283 Ill. App. 3d at 942), replacing it with "whether the offenses were part of a 'common scheme' " (slip op. at 11). Keeping in mind that the object of this inquiry is to determine whether two offenses form an acceptable package for trial, it is clear that the majority's articulation

of this factor is too restrictive. If there is a common method, then it is likely that it would be efficient to conduct a joint trial to avoid the need to present redundant evidence concerning that method. More importantly, the potential for prejudice would be diminished by the likelihood that crimes committed using a common method are probably of similar moral turpitude. For the same reasons, I believe that the majority's reading of the fourth factor--"whether the same or similar evidence would establish the elements of the offenses" (Gapski, 283 Ill. App. 3d at 942)--is too narrow. It should not be limited to "determining whether multiple offenses are part of a single comprehensive transaction" (slip op. at 11), at least if by "single comprehensive transaction" the majority means related as a matter of fact. Instead, trial courts should be allowed to use this factor to determine whether multiple charges may be addressed in one trial efficiently without prejudicing the defendant.

Turning to more general considerations, even if I were to grant the majority its point about the allegedly plain language of the legislature foreclosing policy considerations, and the corollary that "same comprehensive transaction" should be read as "same transaction," I still would not agree with its analysis. A venerable principle of statutory construction is that, "where a plain or literal reading of a statute produces absurd results, the literal reading should yield." People v. Hanna, 207 Ill. 2d 486, 498 (2003). The majority's construction of section 111--4 is absurd in light of its construction of section 115--7.3 of the Code (725 ILCS 5/115--7.3 (West 2004)). The majority begins its discussion of section 115--7.3 by noting that, though (in the majority's opinion) it was error to join the charges, any error was harmless because "the alleged joinder error did not prejudice defendant." Slip. op. at 14. Thus, the majority holds that it was improper, albeit harmless, to join the charges in this case even though no prejudice accrued to defendant. Parenthetically, this seems

contrary to the committee comments to section 111--4: "The court may order a separate indictment for each offense if for any reason the defendant would be prejudiced or the jury confused." 725 ILCS Ann. 5/111--4, Committee Comments--1963, at 653 (Smith-Hurd 2006). Conversely, the majority finds misjoinder even though it concludes that defendant was not prejudiced. Moreover, this result is absurd, in that the majority expressly sanctions the admission of all of the evidence under section 115--7.3 that was admitted under section 111--4 in this case. Thus, the trial court properly allowed the jury to hear all of this evidence; however, it erred because it allowed the jury to consider an additional count based on this evidence. Put differently, a mini-trial of the related offense had in the course of a trial on the primary offense is fine, but it is improper to hold a joint trial. I cannot conceive of what value such a rule serves.

A value it clearly does not serve is stare decisis. Accepting the majority's assertion that People v. McLemore, 203 Ill. App. 3d 1052, 1057-58 (1990), "originated the efficiency factor" (slip op. at 4), the majority is overruling 18 years of law. Since McLemore, several cases have relied upon this factor when assessing the propriety of joinder. See Boand, 362 Ill. App. 3d at 116; Willer, 281 Ill. App. 3d at 952; Patterson, 245 Ill. App. 3d at 588. Stare decisis counsels that a court should " 'stand by precedents and not disturb settled points.' " People v. Sharpe, 216 Ill. 2d 481, 519-20 (2005), quoting Neff v. George, 364 Ill. 306, 308-09 (1936). This is particularly true in the realm of statutory construction, as a departure from precedent amounts to an amendment to the statute. People v. Antoine, 286 Ill. App. 3d 920, 924 (1997). The legislature is presumed to be aware of judicial constructions of statutes, and inaction by the legislature suggests agreement. Antoine, 286 Ill. App. 3d at 925. Hence, it is for the legislature to alter the manner in which we interpret section 111--4, if it is to be altered at all. Indeed, the majority's rewriting of the test for joinder implicates

many other past decisions as well. See, e.g., People v. Trail, 197 Ill. App. 3d 742, 746 (1990) (listing "common method" and "common type of victim" as factors); People v. Terry, 177 Ill. App. 3d 185, 194 (1988) (listing "common method" as a factor). I am not willing to disturb these decisions.

Finally, I note the case of People v. Harris, 147 Ill. App. 3d 891 (1986). Harris bears notable similarities to this case:

"In this cause the offenses occurred within approximately two blocks and within about 31 hours. In each instance the offender followed elderly women to their apartments, grabbed them around the neck from behind, and forced them into their apartments. Both women were beaten and robbed of money. Both were asked about jewels. One victim was raped and had all her clothes removed except her stockings. The other was told she was too old to be raped, but when she regained consciousness she was wearing only a slip. Statements made by defendant to the police included admissions relating to both attacks. Of these factors, the physical proximity, the common method of operation, and the common type of victim all support the trial court's determination to grant the State's motion." Harris, 147 Ill. App. 3d at 894-895.

The key link in Harris appears to be the similarity between the two crimes. The Harris court concluded that "the facts in this cause clearly established that the two series of offenses were part of a comprehensive transaction so as to permit their joinder for trial." Harris, 147 Ill. App. 3d at 895. The trial court in this case properly made a similar determination.

Ultimately, if the majority is correct, it is because "same comprehensive transaction" means "related in reality." Essentially, this makes "same comprehensive transaction" mean the same thing as "same transaction." I cannot ignore that troublesome word "comprehensive," which clouds the

meaning of the phrase. Moreover, we are engaged in criminal procedure here and not metaphysics. "Related as a matter of fact" is a far less useful concept than "forms an acceptable package for trial." Because I do not believe that the legislature's words "same comprehensive transaction" foreclose judicial inquiry into policy, I cannot join the majority's discussion of this issue.