NOTICE

Decision filed 04/04/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 220627-U

NO. 5-22-0627

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Pulaski County. |
| | ) | |
| v. | ) | No. 21-CF-21 |
| | ) | |
| JARED WADE HINMAN SR., | ) | Honorable |
| | ) | Jeffery B. Farris, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court.
Presiding Justice Vaughan and Justice Welch concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The State presented sufficient evidence for the jury to make reasonable inferences to convict the defendant of predatory criminal sexual assault. The circuit court did not abuse its discretion in allowing testimony of other crimes or bad acts to show the defendant's propensity to commit sex offenses. The circuit court did not err in sentencing the defendant where it considered factors in mitigation for an individual under the age of 18.

¶ 2    A jury found the defendant, Jared Wade Hinman Sr., guilty of two counts of predatory criminal sexual assault of a child and one count of criminal sexual assault. The defendant was sentenced to a total of 55 years in the Illinois Department of Corrections (IDOC) and 3 years to life of mandatory supervised release (MSR). On appeal, the defendant claims insufficient proof to find that the defendant was over 17 years old when the incidents of predatory criminal sexual assault occurred; the trial court erred by allowing several witnesses to provide testimony of overly prejudicial sexual offenses that were unrelated to the charges; and the defendant claims that the

1

circuit court failed to consider mandatory mitigating sentencing factors as required by section 5-4.5-105(a) of the Unified Code of Corrections (730 ILCS 5/5-4.5-105(a) (West 2020)). For the following reasons, we affirm.

¶ 3                                I. BACKGROUND

¶ 4    The defendant was born on December 27, 1982. His parents divorced when he was a child, and the defendant's mother had additional children after she remarried. The defendant had multiple half-sisters, including J.J., born on October 20, 1989, P.R., born on June 11, 1991, and J.H., born on January 25, 1995. The defendant additionally had older brothers from his mother's first marriage and younger half-brothers, who were J.J., P.R., and J.H.'s siblings. The defendant spent a portion of his childhood in a household with his mother and younger half-siblings. In August of 2002, the defendant married and had multiple children from that marriage, including A.H., born on April 12, 2002.

¶ 5    A.H. was removed from the defendant's care when she was approximately eight years old due to allegations of sexual abuse by the defendant. The defendant was charged with predatory criminal sexual assault pursuant to section 12-14.1(a)(1) of the Criminal Code of 1961 (720 ILCS 5/12-14.1(a)(1) (West 2010)) in *People v. Hinman*, No. 13-CF-94 (Cir. Ct. Pulaski County), for allegations involving sexual acts with his daughter, A.H. The defendant's half-siblings were interviewed regarding sexual abuse by the defendant after A.H. was removed from the defendant's care.

¶ 6                                 A. Pretrial

¶ 7    The defendant was subsequently charged by information on March 31, 2021, in this case, based on allegations of sexual activity against his half-sister, J.J. The information was subsequently amended, and the defendant was charged with two counts of predatory criminal

2

sexual assault pursuant to section 11-1.40 of the Criminal Code of 2012 (720 ILCS 5/11-1.40 (West 2020)) and one count of criminal sexual assault pursuant to section 11-1.20(a)(2) of the Criminal Code of 2012 (720 ILCS 5/11-1.20(a)(2) (West 2020)). Count I alleged that the defendant knowingly committed an act of sexual penetration by making contact with his penis and the sex organ of J.J. when she was under 13 years of age and the defendant was over 17 years of age. Count II alleged that the defendant put his penis in the mouth of J.J. when she was under 13 years of age and the defendant was over 17 years of age. Count III alleged that the defendant knowingly committed an act of sexual penetration by putting his penis into the sex organ of J.J. when she was a minor, and the defendant did so with knowledge that J.J. was intoxicated.

¶ 8    The State filed a motion to allow other crimes evidence pursuant to section 115-7.3 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-7.3 (West 2020)). The State sought to present testimony from the victim, J.J., of approximately six incidents of uncharged sexual acts involving the defendant to show the nature of their relationship. One of the incidents involved the defendant forcing J.J. and her siblings to engage in sexual acts with each other and together with him. The State additionally sought to present evidence of other crimes or bad acts involving the defendant's half-sisters, P.R. and J.H., as well as testimony by the defendant's daughter, A.H., to show the defendant's propensity to commit sex offenses. The State provided descriptions of the allegations of the victim and the corroborating witnesses. The allegations included the defendant forcing his relatives to jointly perform acts of oral sex on him and with each other, as well as incidents of inappropriate touching, forced anal sex, and vaginal sex. The State argued that the probative value of their testimony outweighed the prejudice to the defendant when considering the proximity in time of the allegations and the degree of factual similarity of the allegations to the charged offense, as well as other relevant facts and circumstances.

3

¶ 9    The defendant filed a response to the State's proffered evidence of other crimes evidence. The defendant requested an opportunity to cross-examine the proposed witnesses regarding the time, content, and circumstances related to their statements.

¶ 10    The circuit court held a hearing on the State's motion to allow other crimes evidence. The State argued that the victim in this case, J.J., was allowed to testify to the entirety of her relationship with the defendant. The defense argued that testimony of J.J. was required before the circuit court could make its determination, and requested a hearing where the State would make a formal offer of proof. The defense additionally argued that the State should not be allowed to present more evidence of other events than the events which were charged. The circuit court found that the State's motion appeared to provide a "very specific" framework of events involving J.J. that would be presented in testimony. The circuit court granted the portion of the motion regarding testimony by J.J. over the defendant's objection. The circuit court additionally stated that the defense may object during the trial, outside of the presence of the jury, if the testimony of uncharged events became excessive. Defense counsel conceded that if the State presented evidence regarding when the sexual abuse started and the frequency of the abuse, she did not anticipate a problem with J.J.'s testimony.

¶ 11    The circuit court addressed the second part of the State's motion regarding other crimes evidence by the three additional victims. The State argued that the incidents involving the additional victims occurred within 15 years. The witnesses were all female family members that were significantly younger than the defendant. The witnesses were in situations where the defendant was a caretaker, either as a father or an older sibling that was babysitting. The incidents involved group sex. The witnesses additionally observed violence and had received threats from the defendant.

4

¶ 12    The defense argued that the circuit court was required to hear the testimony of the potential witnesses to determine whether they would testify as expected. The defense additionally argued that the similarities were not sufficient to justify the admission of the testimony. The allegations raised by each witness were not similar where some of the allegations involve drugs and alcohol. The defense raised the issue of P.R. potentially testifying that the defendant would have his half-siblings "smoke something on foil." The defense also did not specifically address the potential testimony regarding group sex with the defendant and his siblings. Also, some allegations mention anal sex, but not by all, and that allegation would not relate to the victim's testimony. The defense claimed that the witness testimony would be overwhelmingly more prejudicial than probative.

¶ 13    The circuit court found that there was no requirement for the State to provide live testimony as an offer of proof. The circuit court additionally found that the proposed testimony was not substantially more prejudicial than probative, and the testimony was subject to cross-examination. The circuit court, however, believed that "something wrapped in foil" may provide the wrong impression and admonished the State to "take consideration of things of that nature that are purely inflammatory" or "may be seen as purely inflammatory." The circuit court reserved its ruling on the issue regarding "smoking something in foil" and allowed testimony regarding alcohol.

¶ 14                                    B. Trial

¶ 15    The jury trial began on May 23, 2022. The State presented its opening argument, while the defendant reserved opening argument for the beginning of his case. The defendant's birth certificate showing that his birth date was December 27, 1982, was admitted into evidence without objection after opening argument.

¶ 16    J.J. testified that her date of birth was October 20, 1989, and she grew up in a house with her siblings and her half-brother, the defendant. J.J. testified that their mother worked often, and

5

the defendant would babysit daily. J.J. recalled an incident that occurred when she was 5 years old, and the defendant was 12 years old. She was dancing in the kitchen and the defendant asked if she wanted to learn how to dance. J.J. agreed and the defendant took her into his bedroom. J.J. testified that the defendant put her on a bed, fully clothed, and "he was pushing himself onto me like dry humping." The defendant then "stopped and walked off."

¶ 17    J.J. testified to another incident that occurred when she was that same age. The defendant was babysitting, and he gave J.J. and her sister, P.R., a bath together. The defendant took J.J. out of the bathtub and into a bedroom where the defendant made J.J. perform oral sex. J.J. testified that their mother returned home during the incident. The defendant shoved J.J. into a closet but their mother found the defendant with his pants undone and J.J. was not wearing clothes. J.J. testified that she remembered their mother spanking the defendant with a belt. Their mother also spanked J.J. for not telling her what had happened. J.J. testified, "It made me feel like I had done something wrong, and I didn't want to tell her about any of that in the future because I thought I would get in trouble."

¶ 18    J.J. testified that their mother allowed the defendant to continue to babysit after that incident and the abuse continued. J.J. testified that the abuse seemed to occur "all the time" and she lived with "an overall sense of dread and doom." J.J. testified that she avoided being alone with the defendant. The defendant would take J.J. places such as a skating rink or an abandoned building, and "make [her] perform oral on him." J.J. testified that they would visit their grandmother's house on the weekends and the defendant would take her down to the basement. He would also wake J.J. up to make her perform oral sex when they stayed at their grandmother's house. When J.J. was approximately 11 years old, the defendant gave her alcohol for the first time.

6

J.J. testified that the defendant would have their siblings "take turns doing oral on him," and the defendant would perform oral on J.J. J.J. could not recall specific details of those events.

¶ 19    J.J. then testified to the incidents alleged in count I and count II, which occurred when she was 10 years old and living in Kentucky. Their mother had asked the defendant to pick up dresses from their grandmother's house in Mound City, Illinois, for J.J. and her sisters to wear to a church. J.J. went with the defendant to pick up the dresses because she wanted to visit her grandmother. The defendant made J.J. "perform oral on him for the entire ride from Lovelaceville, Kentucky, all the way to Mound City." J.J. testified that it started when they left the house and then near the halfway point of the drive, the defendant stopped his truck in a wooded area on a back road. J.J. testified that he wanted her to continue when the truck was stopped. She testified that she "had an idea that maybe if I said I had to use the bathroom, I could get out of the truck." The defendant allowed her to use the bathroom and J.J. tried to escape. The defendant chased J.J., "dragged" her back, and "threw" her into the truck. The defendant then said, "if you ever run away from me like that again, I'll kill you." The defendant then put on a flavored condom. J.J. recalled the taste of "fruity rubber." He made her continue until they reached their grandmother's house. J.J. testified that the defendant had shoved and held her face down and she was "gagging and crying and snot."

¶ 20    J.J. then described the incident that occurred after they arrived at their grandmother's house. J.J. ran inside, but their grandmother was not home. The defendant followed J.J. into the house. J.J. testified that "since [J.J.] didn't do what he had asked [her] to do that he was going to put it inside of [her]. And he said that he was either going to put it in my butt or in my vagina." J.J. told the defendant, "please don't put it in my butt" because she remembered something that her brother had told her. J.J. screamed and the defendant put his hand over J.J.'s mouth to quiet her. J.J. was undressed from the waist down. She testified that she "remember[ed] the weight of

7

his body on top of [her] and him shoving his penis onto my vagina" and that it "felt like a fist just like punching me in the vagina." The defendant stopped after J.J.'s older half-brother arrived, and the defendant had heard a car door closing.

¶ 21    J.J. testified to her age at the time of the incidents described in count I and count II, and the following testimony was provided:

> "Q. I think you initially said that you were ten and he was—do you know how old he was?
> A. He is seven years older than me.
> Q. Okay. So do you believe he was 17?
> A. I believe so.
>                                    * * *
> Q. [J.J.], I'm sorry to ask again. Your date of birth is?
> A. 10-20-89.
> Q. And so you said this happened when you were ten years old?
> A. Yes.
> Q. So that would have been 10-20 of '99. That was when you turned ten years old, right?
> A. Right.
> Q. Okay. And then your eleventh birthday would have been October 19th [*sic*] of 2000. You believe it happened at some point in that year?
> A. Yes.
> Q. Do you know what grade you were in at that time?
> A. When it happened?
> Q. Yes.
> A. May have been in the fourth grade.
> Q. And do you know where you attended fourth grade?
> A. Lone Oak Elementary.
> Q. So that was still at Lone Oak. Do you recall—well, did you continue at Lone Oak? Or at some point, did you leave Lone Oak school?
> A. We left Lone Oak sometime in my fifth-grade year. It was October of 2000.
> Q. Okay. Was that right around your eleventh birthday?
> A. Correct.
> Q. Do you remember what the dresses were for?
> A. I don't remember exactly.
> Q. Okay. Were there different occasions that you would get dresses?
> A. It could have been around Easter.
> Q. Okay.
> A. But I'm not certain."

8

J.J. also testified that she was not wearing a winter coat when the incident occurred on the drive to and at her grandmother's house.

¶ 22    J.J. additionally testified that the abuse was "still pretty constant" after that incident until she was 12 years old. J.J. believed that the defendant stopped after she started menstruating, and the defendant had married. J.J. testified that the defendant was inappropriate towards her again when she was alone in a vehicle with the defendant when she was 14 years old. The defendant had offered her "$400.00 for a blow job." J.J. told him "no," and he did not do anything further.

¶ 23    J.J. testified to the incident alleged in count III, which occurred at her grandmother's house when she was 16 years old. J.J. was drinking alcohol with the defendant, his wife, and her sister, P.R., after their grandmother went to sleep. J.J. remembered vomiting in her grandmother's backyard and the defendant had offered to help. The defendant then put J.J. in a vehicle and drove her to a place near an electrical substation. J.J. testified that when they stopped, she opened the car door to vomit. While she was vomiting, she felt the defendant's hands undoing her pants. The defendant removed one of J.J.'s legs from her pants and pulled her on top of him in the driver's seat. J.J. testified that "he put his penis inside of me." She "flung" herself to the car door and vomited again. J.J. testified that when she woke up the following morning, she had remembered what had happened to her and cried. J.J. additionally testified that she had confronted the defendant about that incident approximately a year later. The defendant had told her that "he thought it was mutual, and that he was in love with [J.J.] and he thought that [J.J.] was in love with him." J.J. additionally told the defendant's wife what had happened. She had wanted the defendant's wife to end her relationship with the defendant because of the defendant's violent behavior and he had hit his wife on several occasions.

9

¶ 24    J.J. testified that she had not spoken to the defendant in years and felt no connection to him. She believed that he was a danger to society. J.J. testified that she did not want to talk to the police about what had happened. She also did not want the defendant to continue to hurt her niece, A.H., or anyone else.

¶ 25    P.R. testified that she lived with the defendant until he turned 18 years old. After that time, the defendant lived with their grandmother. P.R. testified that she was molested by the defendant when she was four or five years old. The abuse occurred in several places, including their grandmother's house and in vehicles. P.R. explained that the defendant would "put our mouth down there," "touch private parts," and "try to put his mouth down there." P.R. additionally testified that the defendant would give his half-siblings alcohol.

¶ 26    The defendant would take P.R. and her siblings to the basement of her grandmother's house in Mound City. P.R. testified to an incident that occurred at their grandmother's house that involved J.J. and the defendant. The defendant gave J.J. and P.R. vodka and orange juice. Then he stripped off their clothing and had "sexual relations" with his sisters and made them interact with each other. P.R. testified that the defendant had threatened to kill them, and they were afraid of the defendant.

¶ 27    P.R. testified that the abuse stopped when she was approximately eight years old. P.R. believed that the defendant stopped molesting her because she had threatened to tell someone about the defendant.

¶ 28    P.R. additionally testified that when she was 18 years old, the Department of Children and Family Services (DCFS) investigated the defendant's family. The defendant had called P.R. for help, and P.R. went to the defendant's home to speak to his daughter, A.H., while the caseworker was present. P.R. promised A.H. that the defendant would never hurt her again if she told her story.

10

P.R. told the DCFS caseworker about the defendant's history of sexual abuse. DCFS removed the defendant's children from his care.

¶ 29    On cross-examination, the defense counsel questioned P.R. on whether she had reported abuse by the defendant before DCFS involvement. P.R. responded that she was suspicious of sexual abuse to A.H. P.R. had witnessed the defendant pick up A.H. by her neck and throw her across a room. P.R. explained that she was fearful of the defendant when she was a child because he had threatened to kill her. She reported the defendant when she became an adult.

¶ 30    A.H. testified that the defendant was her father and J.J. was her aunt. A.H. testified that the earliest memory of sexual abuse by the defendant was when he touched her in the bathtub. When A.H. was six or seven years old, the defendant penetrated her anally at his grandmother's house in Mound City, Illinois. She described an incident where the defendant gave A.H. a choice of putting his penis in "your butt" or "your front" and proceeded to penetrate her anally. A.H. yelled because it hurt, and the defendant flipped her over and penetrated her vaginally. After that incident, the defendant would penetrate A.H. vaginally.

¶ 31    A.H. testified to an incident where A.H. was asleep at the grandmother's house. A.H.'s mother woke her to join the defendant and her mother in their bedroom. The defendant was naked, and he directed A.H.'s mother to perform oral sex on A.H. A.H. testified that her mother was upset and had been crying. A.H. was directed to perform oral sex on her mother and to assist her mother perform oral sex on the defendant.

¶ 32    When A.H. was eight years old, DCFS investigated her family because her mother had attempted to kill herself. P.R. was present at the house when the DCFS caseworker was investigating. P.R. was the first person that A.H. had spoken to about the sexual abuse by defendant. A.H. was removed from her parents' care at that time.

11

¶ 33    J.H. testified that the defendant was 12 years older than her and her half-brother. The defendant moved from their household when she was five years old, but he would babysit J.H. at their grandmother's house in Mound City, Illinois. J.H. testified to an incident where the defendant sexually violated her in a car when she was approximately six years old. J.H. additionally testified that the defendant would wake her up in the night to perform sexual acts. He would force her to perform sexual acts in their grandmother's basement and in her bathroom. J.H. testified to a specific incident that occurred when she was 10 to 12 years old. The defendant forced anal sex in their grandmother's bathroom. She testified that the defendant continued to sexually abuse her until she was approximately 13 or 14 years old.

¶ 34    J.H. testified that during a sexual altercation, the defendant "had some form of realization" and he said that "he had to ask himself what the hell is wrong with me." The defendant then admitted to J.H. that he had abused all his half-siblings, except their youngest brother. J.H. additionally testified that the defendant called her when she was 18 years old and asked her for forgiveness. J.H. reported the defendant to the police in 2016, near the time of her twenty-first birthday at the direction of her counselor.

¶ 35    After J.H. testified, the State rested its case. The defense made a motion for a directed verdict and argued that the State was unable to establish that the defendant was over 17 years old for two of the counts. The State responded that the defendant's age was an issue of fact and there was sufficient evidence presented for the jury to find that the defendant was 17 years old. The circuit court denied the motion for directed verdict.

¶ 36    The defendant did not testify or present any evidence. The parties presented closing arguments. The State discussed the charges in its closing argument and explained that they must determine whether the defendant was 17 years old at the time of the incidents for count I and count

II. The State argued that J.J. identified the defendant as being 17 years old at the time of the incidents and his birthday was in December. J.J. testified to the grade school she was attending at that time, it was warm out, and she did not wear a coat on the date of the incidents alleged in count I and count II.

¶ 37 The defendant's closing argument included an argument that the State had not proved beyond a reasonable doubt that the defendant was 17 years old during the time of the incidents alleged in count I and count II. The defense stated that when J.J. turned 10 years old, the defendant was 16 years old. The age of the defendant mattered, and defense counsel questioned J.J.'s credibility.

¶ 38 The jury found the defendant guilty of predatory criminal sexual assault of a child where he touched his penis to J.J.'s sex organ, guilty of predatory criminal sexual assault of a child with regard to the defendant's penis in mouth of J.J., and guilty of criminal sexual assault of J.J.

¶ 39 C. Posttrial and Sentencing

¶ 40 The defendant filed a motion for a new trial and argued that the State did not prove predatory criminal sexual assault beyond a reasonable doubt where it did not prove that the defendant was 17 years old at the time of the incidents charged. The defense claimed that the State did not prove sexual assault beyond a reasonable doubt where the victim could not remember details of the incident and there was no corroborating or physical evidence presented. The defendant additionally claimed that he was denied a fair trial where J.J., A.H., P.R., and J.H. were allowed to testify to other crimes allegedly committed by the defendant where the prejudicial testimony outweighed the probative value of the evidence presented. Additionally, the defendant argued that there was not a substantial degree of similarity between the allegations and the testimony presented.

13

¶ 41    The circuit court heard the defendant's motion for a new trial prior to the sentencing hearing. The defendant argued the issues raised in his written motion for a new trial. The State responded that the issues regarding the defendant's age and testimony of specific details of sexual assault were issues of fact that the jury decided. The State argued that the issue of other crimes evidence was raised in a pretrial motion and relied on those same arguments. The State additionally argued that the other crimes evidence was not a focal point of the trial. The circuit court found that the probative value of the other crimes evidence outweighed the prejudicial effect and denied the motion for a new trial.

¶ 42    During the sentencing hearing, J.J. and J.H. made victim's impact statements and the State requested that the circuit court consider the testimony presented by the other witnesses at trial. The State requested the maximum sentence of 30 years on count I, consecutive 30 years on count II, and a consecutive 15 years on count III, for a total of 75 years in the IDOC served at 85%. The State additionally requested protective orders for J.J. and J.H., and that the defendant should receive a $12,000 fine.

¶ 43    The defendant argued that the minimum sentence was 6 years on count I, 6 years on count II, and 4 years on count III, for a total of 16 years, and requested a sentence of no more than 20 years in the IDOC. Three letters of support were submitted. The defendant argued that the defendant's conduct did not cause or threaten serious physical harm and he did not contemplate that his criminal conduct would have caused or threatened serious physical harm. The defendant additionally argued that according to the jury, the defendant was 17 years old for two of the charges and a young adult for the third charge and the circuit court should consider his young age when the incidents occurred. The defendant did not have a history of prior delinquency or criminal

14

activity when the crimes were committed. He also argued that his character and attitude indicated that he was unlikely to commit another crime.

¶ 44    The defendant made a statement in allocution and addressed his siblings. The defendant stated that his siblings' memories were different from his own, and that he did not hold anything against them. He stated that he loved his family.

¶ 45    The circuit court considered the evidence presented at trial, the contents of the presentence investigation (PSI), victim impact statements, the defendant's allocution statement, letters of support, and arguments by counsel. The circuit court additionally referenced *Miller v. Alabama*, 567 U.S. 460 (2012), and considered that the defendant was 17 years old at the time of the incidents. The circuit court sentenced the defendant to 20 years in the IDOC at 85% time with a MSR of 3 years to life on count I. On count II, the circuit court sentenced the defendant to 25 years in the IDOC at 85% time, to run consecutive to count I. On count III, the defendant was sentenced to 10 years in the IDOC at 85% time, followed by MSR of 3 years to life, to be served consecutively. The circuit court additionally imposed a $12,000 fine and entered a protective order.

¶ 46    The defendant filed a motion to reconsider sentence and argued that the circuit court failed to fully consider the defendant's age at the time of the offenses and his sentence was excessive where he lacked a criminal history. The circuit court was required to consider five factors when sentencing a juvenile offender, including age and accompanying immaturity, home environment, degree of participation, incompetence in dealing with the justice system, and any prospects for rehabilitation. The defendant argued that the circuit court did not give enough weight to the defendant's age or his family or home environment when it imposed a 55-year sentence to IDOC.

¶ 47    The circuit court found that during the sentencing hearing that it had sentenced the defendant to a lesser sentence due to the defendant's lack of criminal history. The circuit court

15

discussed the *Miller* factors and referred to *People v. Holman*, 2017 IL 120655. The circuit court considered that sentencing courts must consider factors associated with youth, including the defendant's age at the time of the offense; evidence that the defendant was particularly immature or unable to appreciate the risks and consequences; the defendant's home environment; the defendant's degree of participation in the offense and any peer pressure; whether the defendant was able to deal with prosecutors, the police, and his capacity to assist his attorneys, and the defendant's potential for rehabilitation.

¶ 48    The circuit court found that the defendant was 17 years old when the offenses occurred. The circuit court considered that it did not have evidence that the defendant was particularly immature and that some people would consider his sexual activity as a sign of maturity while others would consider that sexual activity with younger children as a sign of immaturity or that the defendant was unable to appreciate the risks and consequences of his behavior. The circuit court found that because the defendant acted in secret and attempted to hide his behavior that he was able to appreciate the risks and consequences of his actions. The circuit court considered the defendant's home environment and found that the case was about the defendant's proclivities. No evidence was presented that the defendant was subject to peer pressure and the circuit court found that the defendant had acted on "his own impulses." The defendant was 39 years old at the time of sentencing and the circuit court found that there were no limitations on his ability to interact with police or attorneys based on his age. The circuit court additionally considered the defendant's potential for rehabilitation and found that the defendant demonstrated "zero evidence of remorse."

¶ 49    The defendant's motion to reconsider his sentence was denied. This appeal followed.

¶ 50                                    II. ANALYSIS

¶ 51    On appeal, the defendant argues that there was insufficient evidence to prove that the defendant was at least 17 years old when the incidents occurred; the circuit court erred in allowing several witnesses to testify to overly prejudicial sexual offenses that were unrelated to the defendant's charges; and the circuit court failed to consider mitigating sentencing factors.

¶ 52                          A. Sufficiency of the Evidence

¶ 53    We first address the defendant's challenge to the sufficiency of the evidence. "When considering a challenge to the sufficiency of the evidence, courts of review must consider whether, when viewing all the evidence adduced at trial in a light most favorable to the State, any rational trier of fact could find proof of the essential elements of the charged offense beyond a reasonable doubt." *People v. Edward*, 402 Ill. App. 3d 555, 564 (2010). The State is not required to disprove all possible factual scenarios. *People v. Newton*, 2018 IL 122958, ¶ 27.

¶ 54    "The trier of fact is responsible for determining witness credibility, the weight to be given to their testimony, and the reasonable inferences to be drawn from the evidence." *People v. Harmon*, 2012 IL App (3d) 110297, ¶ 11. Factual disputes are resolved by the trier of fact where evidence can produce conflicting inferences. *Harmon*, 2012 IL App (3d) 110297, ¶ 12. We do not substitute our judgment for the determination made by the trier of fact. *Newton*, 2018 IL 122958, ¶ 26.

¶ 55    The defendant was charged with two counts of predatory criminal sexual assault of a child (720 ILCS 5/12-14.1 (West 2000)) and one count of criminal sexual assault (720 ILCS 5/12-13(a)(2) (West 2000)). The defendant claims that the State failed to prove, beyond a reasonable doubt, the elements to sustain a conviction for predatory criminal sexual assault of a child based on the version of the statute in effect at the time of the offense.

17

¶ 56    In order to be convicted of predatory criminal sexual assault, the accused must be 17 years old or older, and must commit an act of sexual penetration with a victim under 13 years old. 720 ILCS 5/12-14.1 (West 2000). The defendant does not dispute that the State proved that he had committing acts of sexual penetration alleged in both counts of predatory criminal sexual assault of a child under 13 years of age. The defendant, however, disputes his age at the time of the offense. J.J. had testified that the incident occurred when she was 10 years old, and the defendant argues that he was 16 years old for a period after J.J.'s tenth birthday. Specifically, he was 16 years old on October 20, 1999, when J.J. turned 10 years old, until his seventeenth birthday on December 27, 1999.

¶ 57    In both counts of predatory criminal sexual assault, the State alleged that the defendant committed the charged acts in April of 2000, in Pulaski County, Illinois, after the defendant's seventeenth birthday. J.J. testified that the defendant forced her to perform oral sex on the drive to her grandmother's house and a separate event that occurred on the same day at her grandmother's house where he attempted to insert his penis into her vagina.

¶ 58    J.J. could not provide the specific date of the events, but she testified that she went to her grandmother's house to pick up dresses for a church holiday, such as Easter. J.J. testified that she was not wearing a winter coat. She recalled the grade school that she was attending at that time and that she had transferred schools the following October. J.J. additionally testified that the defendant continued to sexually abuse her after the date of those incidents until she was approximately 12 years old.

¶ 59    The jury determined the essential element that the defendant was 17 years old at the time of the incidents alleged in count I and count II based on the testimony that was presented. We will not substitute our judgment for reasonable inferences made by the jury. Substantial evidence was

presented for the State to prove beyond a reasonable doubt that the defendant committed two counts of predatory criminal sexual assault.

¶ 60                                    B. Other Crimes Evidence

¶ 61      In general, evidence of other crimes for the purpose of demonstrating the propensity of the defendant to commit the charged crime is inadmissible. *People v. Manning*, 182 Ill. 2d 193, 213 (1998). The defendant's prior sexual activity with the same child in a sexual offense case is admissible "to show the defendant's intent, design or course of conduct and to corroborate the victim's testimony concerning the charged offense." *People v. Anderson*, 225 Ill. App. 3d 636, 647 (1992). The victim's credibility could face an unfair strain if testimony is limited to make an incident appear isolated. *Anderson*, 225 Ill. App. 3d at 647-48.

¶ 62      Section 115-7.3 of the Code of Criminal Procedure of 1963 (Code) provides an exception for the evidentiary use of the defendant's prior convictions in sexual offense cases, including the crimes of predatory criminal sexual assault of a child and criminal sexual assault. 725 ILCS 5/115-7.3 (West 2020). "Where the other-crimes evidence meets the preliminary statutory requirements, it is admissible if (1) it is relevant; and (2) its probative value is not outweighed by its prejudicial effect." *People v. Cardamone*, 381 Ill. App. 3d 462, 489 (2008).

¶ 63      Section 115-7.3 of the Code specifies that the following factors should be weighed in determining whether the prejudicial effect of admitting other crimes evidence outweighs the probative value:

    "(1) the proximity in time to the charged or predicate offense;

    (2) the degree of factual similarity to the charged or predicate offense; or

    (3) other relevant facts and circumstances." 725 ILCS 5/115-7.3(c) (West 2020).

19

Thus, section 115-7.3 "enable[s] courts to admit evidence of other crimes to show defendant's propensity to commit sex offenses" despite the general rule against other-crimes evidence. *People v. Donoho*, 204 Ill. 2d 159, 176 (2003). Relevant other-crime evidence, however, must not become the focal point of a trial. *People v. Boyd*, 366 Ill. App. 3d 84, 94 (2006).

¶ 64 The circuit court's decision to admit other-crimes evidence is reviewed for an abuse of discretion. *Donoho*, 204 Ill. 2d at 182. An abuse of discretion will be found only where the circuit court's decision is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the circuit court. *Donoho*, 204 Ill. 2d at 182. "The actual limits on the trial court's decisions on the quantity of propensity evidence to be admitted under section 115-7.3 are relatively modest, especially when combined with the highly deferential abuse-of-discretion standard that governs review of such trial court decisions." *People v. Walston*, 386 Ill. App. 3d 598, 621 (2008).

¶ 65 There is no bright-line rule regarding the proximity in time between the prior offense and the crime charged. *Donoho*, 204 Ill. 2d at 184. Courts should consider the issue of proximity in time on a case-by-case basis and the reviewing court may not substitute its judgment for that of the circuit court. *People v. Braddy*, 2015 IL App (5th) 130354, ¶ 32. In *Donoho*, the other crime occurred 12 to 15 years prior to the conduct at issue in that case. *Donoho*, 204 Ill. 2d at 184. Our supreme court in *Donoho* considered that the appellate court in *People v. Davis*, 260 Ill. App. 3d 176, 192 (1994), affirmed the admission of other-crimes evidence over 20 years old to be "sufficiently credible and probative." *Donoho*, 204 Ill. 2d at 184.

¶ 66 The allegations charged against the defendant were based on incidents that occurred when J.J. was 10 years old, in 2000, and for an act that occurred when she was 16 years old, on or between October 20, 2005, and October 19, 2006. The defendant began sexually abusing J.J. when

20

she was approximately five years old, in 1995. A.H., the defendant's daughter, testified to the last incident of the defendant's sexual abuse. The defendant began sexually assaulting A.H. in November of 2009, when she was approximately seven years old, and the abuse continued until she was taken into DCFS custody on September 8, 2010. The allegations of sexual abuse by the defendant spanned approximately 15 years from 1995 through 2010. Witness testimony should not be excluded based on the proximity of time of uncharged testimony to the charged allegations.

¶ 67    Evidence of other crimes must have "some threshold similarity to the crime charged." (Internal quotation marks omitted.) *Braddy*, 2015 IL App (5th) 130354, ¶ 39. Some factual differences will not defeat admissibility. *Braddy*, 2015 IL App (5th) 130354, ¶ 39. General areas of similarities are sufficient to support admissibility. *Donoho*, 204 Ill. 2d at 184. Where the defendant does not have continued access to the victims, the progression of abuse may be different. *Braddy*, 2015 IL App (5th) 130354, ¶ 41.

¶ 68    The charged acts included forcing J.J. to perform oral sex in a vehicle. The defendant also made contact with J.J.'s vaginal area with his penis. During that incident, although it did not include anal penetration, the defendant gave J.J. the option to "put it in [her] butt or in [her] vagina." The defendant additionally was charged with criminal sexual assault where the defendant penetrated the sex organ of J.J. with his penis while she was intoxicated.

¶ 69    The defendant relied on *Cardamone*, 381 Ill. App. 3d 462, to claim that the volume of other-crimes evidence presented made the probative other-crimes evidence overly prejudicial. In *Cardamone*, the circuit court had allowed testimony of 158 to 257 incidents of uncharged conduct. *Cardamone*, 381 Ill. App. 3d at 491. *Cardamone* found that the circuit court did not address the "other relevant facts and circumstances" prong of section 115-7.3 of the Code and stated,

> "We believe that there are several facts and circumstances that weighed against admission. For example, unlike a case where the trial court might admit other-crimes evidence as it

pertains to 1 or even 2 victims, the court here found admissible numerous acts alleged by 15 victims. In the face of so many allegations of misconduct, there was a great risk that the jury could find that defendant must have done *something*, or that it could find defendant guilty beyond a reasonable doubt not of the charges but, instead, of uncharged acts." (Emphasis in original.) *Cardamone*, 381 Ill. App. 3d at 493-94.

¶ 70 *Walston* considered the *Cardamone* case, and found that,

"*Cardamone* gives us a start in assessing the limits imposed on section 115-7.3 propensity evidence by the requirement from section 115-7.3(c) that the undue prejudicial effect of such evidence not outweigh its probative value. However, due to the extreme facts in *Cardamone*, the case instructs us only on the outer bounds of the rule; it reveals nothing of the rule's more subtle inner striations." *Walston*, 386 Ill. App. 3d at 619.

"Simply put, *Cardamone* was an extreme case." *People v. Perez*, 2012 IL App (2d) 100865, ¶ 49.

¶ 71 The defendant claims that the jury's decision was based on the testimony of six uncharged acts of sexual misconduct by J.J. where there was an absence of evidence establishing that the defendant was 17 at the time of committing count I and count II. The defendant claims that the circuit court erred by allowing testimony by J.J. of the defendant's conduct including that the defendant "dry hump[ed]" J.J. when she was five years; forced J.J. to perform oral sex on him after giving J.J. and P.R. a bath; forced J.J. to perform oral sex on him at a skating rink and in abandoned building; directed J.J. to participate in acts of oral sex with him and her siblings; and after J.J. had turned 16 years old, the defendant had offered her $400 to perform oral sex on him.

¶ 72 As discussed above, sufficient evidence was presented for the jury to determine the essential element that the defendant was 17 years old at the time of the incidents alleged in count I and count II. J.J.'s testimony referenced six uncharged incidents demonstrating the progression of abuse and history of her relationship with the defendant that led to the charges against the defendant. J.J.'s testimony referencing other events showed the defendant's intent to engage in a variety of sexual acts with his younger half-sibling, and corroborated J.J.'s testimony concerning the charged offenses. J.J.'s testimony focused on the details of the specific charged incidents. The

22

circuit court did not abuse its discretion in allowing the victim, J.J., to testify to additional acts of sexual misconduct by the defendant that were not charged by the State.

¶ 73    The defendant's behavior towards each victim who testified had general similarities. J.J. testified that she was between the ages of 5 and 12 years old when most of the abuse occurred, and that the defendant committed criminal sexual assault when she was 16 years old. The abuse occurred at their grandmother's house in Mound City, Illinois, when adults were sleeping, or when she was alone with the defendant. J.J. had been intoxicated at times. The defendant had also physically threatened J.J., and she was fearful of the defendant.

¶ 74    P.R. testified that the defendant began to molest her when she was four or five years old. The defendant stopped abusing her when she was eight years old after she threatened to report the defendant. The abuse occurred at their grandmother's house and in vehicles. She testified that the defendant would force oral sex. P.R. testified to a specific event that involved J.J. where the defendant forced J.J. and P.R. to sexually interact with each other after he gave them alcohol. P.R. was afraid of the defendant because he had threatened to kill her.

¶ 75    J.H. was also a half-sibling of the defendant. The defendant moved away when J.H. was five years old. The defendant still had contact with J.H. when he would babysit her at their grandmother's house in Mound City, Illinois. J.H. testified that the defendant sexually violated her in a car when she was approximately six years old. He would wake J.H. in the night and force her to perform sexual acts when she stayed at her grandmother's house. When J.H. was 10 to 12 years old, the defendant forced anal sex. The defendant continued to abuse J.H. until she was 13 or 14 years old.

¶ 76    A.H. was the defendant's daughter. The defendant began to sexually abuse A.H. when she was six or seven years old. The sexual abuse ended when she was eight years old because of DCFS

23

intervention. The defendant would penetrate her anally when they were staying at his grandmother's house in Mound City, Illinois. A.H. testified to an incident where the defendant gave her an option of penetrating her anally or vaginally. A.H. additionally testified that the defendant directed group oral sex with a relative.

¶ 77    The defendant specifically argued that testimony involving the defendant's sexual misconduct with multiple victims was overly prejudicial where the defendant had not been charged with a similar offense. The State argues that the defendant forfeited this issue for appeal and the defendant did not seek plain error review. The defendant, however, sought plain error review in his reply brief.

¶ 78    To preserve an issue for review in a criminal case, the defendant must raise it in either a motion *in limine* or an objection at trial, and in a posttrial motion. *People v. Denson*, 2014 IL 116231, ¶ 18. "A claim of forfeiture raises a question of law, which we review *de novo*." *People v. Sophanavong*, 2020 IL 124337, ¶ 21.

¶ 79    We may review forfeited errors under the plain error doctrine where (1) the evidence "is so closely balanced that the jury's guilty verdict may have resulted from the error" or (2) "the error is so serious that the defendant was denied a substantial right." *People v. Herron*, 215 Ill. 2d 167, 178-79 (2005). The defendant "argued plain error in his reply brief, which is sufficient to allow us to review the issue for plain error." *People v. Ramsey*, 239 Ill. 2d 342, 412 (2010). Before addressing the defendant's plain-error argument, we must first determine whether error occurred. *People v. Lovejoy*, 235 Ill. 2d 97, 148 (2009).

¶ 80    Testimony regarding sexual misconduct with multiple victims was properly admitted. J.J. testified to incidents where the defendant had forced her to perform oral sex including an incident that involved her sibling, P.R. P.R. additionally testified to this conduct with her siblings while

24

intoxicated. Although, the charged allegation did not involve multiple victims, the defendant's behavior was generally similar. The charged incidents occurred when the defendant was alone with a half-sibling and forced her to perform oral sex. The defendant additionally committed criminal sexual assault when J.J. was intoxicated. Consequently, we conclude that there was no error in allowing testimony of sexual misconduct by the defendant that involved multiple victims, thus, no plain error can exist.

¶ 81    Overall, the victims who testified were young females and biologically related to the defendant. The defendant sexually abused the children in secret while the defendant had a supervisory role. Most of the abuse occurred at a house in Mound City, Illinois, or in a vehicle. The defendant additionally would force his victims to perform oral sex acts alone with him or at times included oral sex acts with relatives and jointly with him. Although the allegations did not involve anal penetration, J.J. testified that the defendant gave her that option, but penetrated her vaginally. A.H. testified to a similar situation where she was provided with a choice and the defendant began to penetrate her anally before penetrating her vaginally. P.R. and J.J. both testified that the defendant provided them with alcohol before his sexual assaults. The sexual acts described by the corroborating witness were also not identical; however, there were sufficient general similarities for admission of the other crimes evidence.

¶ 82                                        C. Sentencing

¶ 83    At the sentencing hearing, the circuit court must balance the "retributive and rehabilitative purposes of punishment." *People v. Center*, 198 Ill. App. 3d 1025, 1033 (1990). All factors in aggravation and mitigation must be considered. *People v. Quintana*, 332 Ill. App. 3d 96, 109 (2002). "The seriousness of the crime is the most important factor in determining an appropriate sentence, not the presence of mitigating factors such as the lack of a prior record, and the statute

25

does not mandate that the absence of aggravating factors requires the minimum sentence be imposed." *Quintana*, 332 Ill. App. 3d at 109. The circuit court is not required to articulate its process or its consideration of mitigating factors regarding its sentencing decision. *Quintana*, 332 Ill. App. 3d at 109.

¶ 84 We will not reverse a sentence unless the circuit court abused its discretion. *People v. Stacey*, 193 Ill. 2d 203, 209-10 (2000). "However, when the issue is whether a sentencing court misapprehended applicable law, our review is *de novo*." *People v. Cavazos*, 2023 IL App (2d) 220066, ¶ 33.

¶ 85 The eighth amendment of the United States Constitution prohibits the infliction of "cruel and unusual punishments" (U.S. Const., amend. VIII) and applies to the states through the fourteenth amendment (U.S. Const., amend. XIV). *People v. Dorsey*, 2021 IL 123010, ¶ 37. "[T]he Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." *Miller v. Alabama*, 567 U.S. 460, 479 (2012). A prison sentence of more than 40 years imposed on a juvenile offender constitutes a *de facto* life sentence. *Dorsey*, 2021 IL 123010, ¶ 47.

¶ 86 *Miller* did not foreclose the imposition of a life sentence in prison for juvenile offenders, rather it required sentencing courts to " 'take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.' " *Dorsey*, 2021 IL 123010, ¶ 24 (quoting *Miller*, 567 U.S. at 480). "Neither a finding of permanent incorrigibility nor an on-the-record sentencing explanation is constitutionally required before a juvenile may be sentenced to life without parole." *People v. Wilson*, 2023 IL 127666, ¶ 38.

¶ 87 In 2016, Illinois codified the factors set forth in *Miller* in section 5-4.5-105(a) of the Unified Code of Corrections (730 ILCS 5/5-4.5-105(a) (West 2016)). *People v. Buffer*, 2019 IL

26

122327, ¶ 36. Pursuant to section 5-4.5-105(a), the circuit court is required to consider the following factors in mitigation before imposing a sentence on an individual under the age of 18:

> "(1) the person's age, impetuosity, and level of maturity at the time of the offense, including the ability to consider risks and consequences of behavior, and the presence of cognitive or developmental disability, or both, if any;

> (2) whether the person was subjected to outside pressure, including peer pressure, familial pressure, or negative influences;

> (3) the person's family, home environment, educational and social background, including any history of parental neglect, physical abuse, or other childhood trauma;

> (4) the person's potential for rehabilitation or evidence of rehabilitation, or both;

> (5) the circumstances of the offense;

> (6) the person's degree of participation and specific role in the offense, including the level of planning by the defendant before the offense;

> (7) whether the person was able to meaningfully participate in his or her defense;

> (8) the person's prior juvenile or criminal history; and

> (9) any other information the court finds relevant and reliable, including an expression of remorse, if appropriate. However, if the person, on advice of counsel chooses not to make a statement, the court shall not consider a lack of an expression of remorse as an aggravating factor." 730 ILCS 5/5-4.5-105(a) (West 2020).

¶ 88    At the sentencing hearing, the circuit court stated that it considered the evidence presented at trial, the defendant's PSI, the victim impact statements, arguments of counsel, the defendant's statement in allocution and letters of support, and possible sentencing alternatives. The circuit court considered the defendant's childhood and stated, "There's just nothing about it that's normal or has ever been normal or continues to be normal." The circuit court additionally addressed that defense counsel referred to *Miller* in her sentencing recommendation, and the court believed that defendant's sentence "would pass the *Miller* test." The State requested the maximum sentence on each count for a total of 75 years in the IDOC. The defendant requested a sentence closer to the

27

total minimum sentence of 16 years in the IDOC. The defendant was sentenced to 20 years for count I, 25 years for count II, and 10 years for count III. The sentences were to be served consecutively for a total of 55 years in the IDOC.

¶ 89    The defendant filed a motion to reconsider his sentence and alleged that the circuit court failed to fully consider his age at the time of the offenses and failed to consider the defendant's criminal history at the time the offenses occurred. Although the circuit court considered the defendant's age at the time of the sentencing hearing, the circuit court specifically addressed each of the sentencing factors for individuals under 18 years of age at the time the offenses occurred during the motion to reconsider the defendant's sentence.

¶ 90    The circuit court found that the defendant was 17 years old when the offenses occurred. The circuit court did not believe that the defendant was particularly immature. The defendant acted in secret and attempted to hide his behavior that he was able to appreciate the risks and consequences of his actions and had acted on "his own impulses." The circuit court considered the defendant's home environment and found that the case was about the defendant and his own proclivities. The circuit court additionally considered the defendant's potential for rehabilitation and found that the defendant demonstrated "zero evidence of remorse." The circuit court noted that it had considered the defendant's lack of a criminal history and sentenced the defendant to a lesser sentence based on that factor. The defendant was 39 years old at the time of sentencing and the circuit court found that there were no limitations on his ability to interact with police or attorneys based on his age.

¶ 91    The circuit court considered the defendant's youth and attendant circumstances when making its determination and the defendant received a sentence within the sentencing range. The circuit court did not err when sentencing the defendant.

28

¶ 92                     III. CONCLUSION

¶ 93    For the foregoing reasons, we affirm the judgment of the circuit court of Pulaski County.

¶ 94    Affirmed.